UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ORZY LATIPOV and UMAR NAZAROV, individually and on behalf all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>AN ENTERPRISE INC and KOSTADINKA ZAGORSKA,<br><br>Defendants. | Civil Action No. 1:23-cv-01859 |

## CLASS ACTION COMPLAINT

1. This is an action brought on behalf of current and former delivery drivers challenging Defendant AN Enterprise, Inc's ("AN Enterprise") unlawful practices. Plaintiffs challenge AN Enterprise's unlawful practice of making deductions from their wages and failing to pay all wages due. Plaintiffs contend that, although they were classified by AN Enterprise as independent contractors, they were, in fact employees of AN Enterprise. Plaintiffs also contend that Defendant Kostadinka Zagorska is individually liable by virtue of her role within AN Enterprise, and her permitting AN Enterprise's unlawful deductions and minimum wage violations.

2. Plaintiffs Orzy Latipov and Umar Nazarov bring this case as a class action under Fed. R. Civ. P. 23 on behalf of all current and former delivery drivers who provided delivery services for AN Enterprise between March 24, 2013 and the present. Plaintiffs allege that as a result of Defendants' policies, illegal deductions were made from their wages in violation of the Illinois Wage Payment and Collection Act ("IWPCA"), 820 Ill. Comp. Stat. 115/9. Plaintiffs also contend that Defendants unlawfully required them and others similarly situated to incur

1

expenses that should have properly been borne by Defendants in violation of 820 Ill. Comp. Stat. 115/9.5.

3. Plaintiffs also bring this case as a collective action pursuant to 29 U.S.C. §216(b) on behalf of all current and former delivery drivers who provided delivery services for AN Enterprise between March 24, 2020 and the present. Plaintiffs allege that as a result of Defendants' policies, they did not receive minimum wage compensation for all hours worked as required by the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §201 et seq.

4. Plaintiff Orzy Latipov also seeks to represent, under Fed. R. Civ. P. 23, a class of similarly situated drivers who have performed truck driving services for Defendant AN Enterprises subject to a lease agreement with AN Enterprises at any time between March 24, 2019 and the present. Latipov alleges that AN Enterprises' unlawful practices described in this complaint are in violation of 49 U.S.C. § 14102 and its regulations, referred to hereinafter as the Truth-in-Leasing regulations or TIL Regulations.

**PARTIES**

5. Defendant AN Enterprise, Inc ("AN Enterprise") is an Illinois corporation headquartered in Elk Grove Village, Illinois. AN Enterprise does business in Illinois, operates facilities in Illinois, and is registered with the Illinois Secretary of State.

6. Defendant Kostadinka Zagorska is an Illinois resident and is the President and Secretary of AN Enterprise. Zagorska possesses and exercises the authority to make or participate in decisions concerning drivers' compensation; implement and enforce rules affecting the material terms of drivers' work, employment, and compensation; hire drivers, supervise their work, and impose discipline on them.

7. Defendants jointly and severally are subject to the provisions of the IWPCA and are "employers" within the meaning of that statute.

8. Defendant AN Enterprise is a motor carrier that transports property in interstate commerce under authority issued by the United States Department of Transportation ("DOT"). AN Enterprise transports property in equipment leased by individual truck drivers, including Plaintiffs.

9. Defendants employ individuals engaged in commerce or in the production of goods for commerce and/or handling, selling, or otherwise working on goods or materials that have been moved in or produced in commerce by any person, as required by 29 U.S.C. §§ 206-7.

10. Defendants' annual gross volume of sales made or business done exceeds $500,000.

11. Plaintiff Orzy Latipov is a citizen of North Carolina. Latipov provided delivery services for AN Enterprise in the State of Illinois as a delivery driver from approximately March 2021 to October 2022. During this time, Latipov was classified as an independent contractor.

12. Plaintiff Latipov and those members of the putative class executed lease agreements with AN Enterprise to provide truck driving services.

13. Plaintiff Umar Nazarov is a citizen of Pennsylvania. Nazarov provided delivery services for AN Enterprise in the State of Illinois as a delivery driver from approximately March 2020 to February 2022. During this time, Nazarov was classified as an independent contractor.

**JURISDICTION AND VENUE**

14. This Court has federal question jurisdiction over Plaintiffs' FLSA claims under 29 U.S.C. §216(b) and Plaintiff Latipov's Truth-in- Leasing claims under 28 U.S.C. § 1331.

15. This Court has supplemental jurisdiction over Plaintiffs' IWPCA claims under 28 U.S.C. § 1367 because these claims are so related to the claims over which this Court possesses

original jurisdiction that it forms part of the same case or controversy under Article III of the Constitution.

13. The Court has personal jurisdiction over Defendants because Defendant Kostadinka Zagorska resides in Illinois, Defendant AN Enterprise is registered with the Illinois Secretary of State, Defendant Zagorska is named as president and secretary of AN Enterprise in its filings with the Illinois Secretary of State, Defendants do business in the State of Illinois, and Defendants have expressly consented to personal jurisdiction in the State of Illinois and this judicial district.

14. The Court has personal jurisdiction over Plaintiffs and the putative class members because they have worked in Illinois for an Illinois employer.

15. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events and/or omissions giving rise to the claims set forth in this complaint occurred in this judicial district.

## FACTUAL BACKGROUND

### A. Facts Relating to Illinois Wage Payment and Collections Act (IWPCA) and Fair Labor Standards Act (FLSA) Violations

16. Plaintiffs were hired by AN Enterprise to perform deliveries in Illinois and across the United States.

17. Plaintiffs worked for AN Enterprise full time, up to 70 hours a week. They did not work anywhere else while working for AN Enterprise.

18. Plaintiffs were required to regularly check in with AN Enterprise's dispatchers to take their instructions as to which loads to haul, where and when to pick up these loads, and which routes to take.

19. Plaintiffs were also required to comply with AN Enterprise's strict time constraints for deliveries and other instructions and was required to regularly report to AN Enterprise staff and office in Illinois.

20. Plaintiffs were paid on a percentage-of-the-load basis for the deliveries they made.

21. Throughout the course of Plaintiffs' employment, Defendants made deductions from their pay, which often came to thousands of dollars per week. Plaintiffs did not authorize these deductions.

22. For example, Defendants made deductions for insurance, problem deliveries, and accidents from Plaintiffs' pay.

23. Plaintiffs were also charged an "escrow" or "deposit" of $5,000.00, which Defendants deducted from their pay during their employment. Defendants never repaid this sum to Plaintiffs.

24. In addition, Defendants failed to reimburse Plaintiffs for out-of-pocket expenses they incurred in order to perform his duties, including gas, cell phone payments, repair tools, and GPS, among others. Plaintiffs' out-of-pocket expenses typically amounted to approximately $3,500 per week.

25. Finally, there were a number of weeks in which Plaintiffs' take-home pay was significantly below minimum wage. The out-of-pocket expenses which Plaintiffs were forced to incur, set out above, brought their pay further below minimum wage.

26. For example, during the weeks of April 18, 2022, and June 27, 2022, Latipov was paid less than the minimum wage after AN Enterprise's deductions and his out-of-pocket expenses.

27. Likewise, during the week of January 24, 2022, Zazarov was paid less than the minimum wage after AN Enterprise's deductions and his out-of-pocket expenses.

28. AN Enterprise exercised extensive control over the Plaintiffs' and other similarly situated drivers' work, including the number of hours worked, the distance driven, and the deliveries performed by Plaintiff and other similarly situated truck drivers.

29. Defendant Zagorska exerted full control over Plaintiffs' and other delivery drivers' working conditions. She dictated, controlled and ratified the wages paid, hours worked, and all related compensation policies and practices for all drivers working for AN Enterprise.

30. Defendants required the Plaintiff and all other similarly situated truck drivers to submit to mandatory drug testing and a background check in order to start working for AN Enterprise.

31. Plaintiffs and other class members were required to pick up trucks and trailers from AN Enterprise's yard in Illinois.

32. Plaintiffs and other class members were required to pick up and deliver freight for Defendants in Illinois.

33. The instructions that the Plaintiff and putative class members received regarding their deliveries came from AN Enterprise's dispatchers and management team in Illinois.

34. Defendants controlled every aspect of their drivers', including Plaintiffs', work. Such control included, but was not limited to the following:

    a. Defendants required Plaintiffs and other similarly situated drivers to comply with instructions dictated by written and unwritten policies, procedures, and directives regarding Plaintiffs' and other similarly situated drivers' duties.

6

b. Plaintiffs, as well as other similarly situated drivers, were required to report to or contact dispatchers employed by the AN Enterprise in Illinois each day, at which time the Plaintiff and other similarly situated drivers were provided with delivery assignments.

c. AN Enterprise management instructed Plaintiffs and other similarly situated drivers which loads to pick up, the location of the loads/goods to be delivered, as well as the time frames for loading onto the equipment. Plaintiffs and other similarly situated drivers had and have no discretion with respect to which loads they would pick up or deliver or when. Additionally, AN Enterprise dictated the time by which each delivery must be made.

d. Plaintiffs and other similarly situated drivers were required to purchase and carry GPS devices, which allowed AN Enterprise personnel to track the drivers throughout the day or night. AN Enterprise's dispatchers and supervisors also communicated with Plaintiffs and similarly situated drivers while they were driving via telephone in order to convey instructions and otherwise oversee the drivers.

e. AN Enterprise required Plaintiff and other similarly situated drivers to undergo background checks and drug testing prior to beginning work.

f. AN Enterprise subjected drivers, including Plaintiffs, to a variety of deductions, including deductions for insurance coverage, accidents, speeding tickets, etc…

g. If Plaintiffs or other similarly situated drivers wished to take time off, AN Enterprises required them to give timely advance notice, with the Plaintiff and other similarly situated drivers disciplined or terminated for failure to provide such notice.

35. AN Enterprise required Plaintiff and putative class members to submit all bills of lading, logbooks, and other required paperwork to the AN Enterprise's office in Illinois.

36. At no time during their employment were Plaintiffs and other similarly situated drivers allowed to have their own customers nor did they ever have their own customers. Further, they could not choose and did not choose their own routes for delivery of cargo, could not and did not receive compensation or otherwise exchanged payment for their delivery other than being compensated by AN Enterprise and could not and did not negotiate any matters or bargains with any customers or brokers.

37. Plaintiffs and other similarly situated truck drivers shared similar job titles, followed the same policies and practices, performed similar duties, and as a result of Defendants' common scheme of misclassification and applications of unlawful deductions, were similarly denied compensation in violation of the IWPCA.

**B.  Facts Relating to Truth-in-Leasing Regulations ("TIL") Violations**

38. Defendant AN Enterprise is a trucking company with authority granted by the DOT to transport property. It employs drivers to transport its customers' freight in interstate commerce.

39. Defendant AN Enterprise is a motor carrier and an authorized carrier under 49 U.S.C. §§ 13901 and 13902, *et seq*.

40. Defendant AN Enterprise is a "motor carrier" and an "authorized carrier" under the TIL regulations.

41. AN Enterprise offers to lease equipment to individuals seeking to perform services a driver. Those individuals who choose to lease equipment from AN Enterprise are required to sign an "Independent Contractor Equipment Lease Agreement."

42. The Independent Contractor Equipment Lease Agreements are standard form agreements that AN Enterprise presents to drivers on a take-it-or-leave it basis, without the opportunity to negotiate.

43. AN Enterprise Independent Contractor Equipment Lease Agreement constitutes a "lease" within the meaning of the Truth-in-Leasing regulations, 49 C.F.R. § 376.2€.

44. Latipov signed multiple Independent Contractor Equipment Lease Agreements between March 2021 and October 2022.

45. Section 15 of the Independent Contractor Equipment Lease Agreement states that the driver must maintain a $2,500 security deposit, and that AN Enterprise may withhold from the driver's pay until the full security deposit has been deposited.

46. The Independent Contractor Equipment Lease Agreement states that AN Enterprise will deduct $250 per week until the full $2,500 security deposit is deposited.

47. The amounts deducted and retained by AN Enterprise from drivers' compensation pursuant to section 15 of the Independent Contractor Equipment Lease Agreement constitute an "escrow fund" within the meaning of the TIL regulations, 29 C.F.R. § 376.2(l).

48. AN Enterprise's Independent Contractor Equipment Lease Agreements do not comply with TIL regulations pertaining to escrow funds because, among other things, they fail to sufficiently identify and describe the specific items to which the escrow fund can be applied.

49. Additionally, AN Enterprise has failed to adhere to the TIL regulations concerning maintenance and accounting of drivers' escrow funds by,

   a. Failing to pay interest to the drivers on the balance of their escrow funds on at least a quarterly basis; and

  b. Failing to provide an accounting to the drivers of all transactions involving their escrow funds, either by clearly indicating in individual settlement sheets the amount and description of all deductions made from the funds or by providing a separate accounting to the drivers of all transactions involving the escrow fund on a monthly basis.

50. Under the TIL regulations, AN Enterprise was required to disclose in a written lease all expenses that it would "charge back" to the drivers.

51. AN Enterprise made numerous deductions from drivers' pay that were not disclosed in the Independent Contractor Equipment Lease Agreement. For example:

  a. On July 29, 2022, AN Enterprise deducted $1,538.36 from Latipov's pay without any explanation other than "OWE." AN Enterprise also deducted $8.95 for priority mail from Latipov's July 29, 2022 pay.

  b. On August 19, 2022, AN Enterprise deducted $150 from Latipov's pay for a late fee.

  c. On October 7, 2022, AN Enterprise deducted $100 for LTL.

52. Under the TIL regulations, AN Enterprise was required to disclose in a written lease the amount that it would pay Latipov and the other putative class members as compensation, and to specify that it would provide Latipov and the other putative class members with a copy of the rated freight bills upon which their compensation was based, either before or at the time of settlement.

53. The Independent Contractor Equipment Lease Agreement failed to disclose that AN Enterprise would provide a copy of the rated freight bills.

54. AN Enterprise failed to provide Latipov and the other putative class members with a copy of the rated freight bills upon which their compensation was based.

55. AN Enterprise's deductions, chargebacks, withholdings, excess charges, and failure to comply with the TIL regulations have resulted in an improper windfall to AN Enterprise.

56. AN Enterprise's drivers have suffered harm and sustained damages from AN Enterprise's actions, including improper deductions from their pay and failing to adhere to the TIL regulations' requirements for handling escrow accounts.

## CLASS ACTION ALLEGATIONS

57. Plaintiffs bring Counts I and III this lawsuit against Defendants as a class action pursuant to Fed. R. Civ. P. 23 class action for and on behalf of the following classes, for which Plaintiffs seek certification:

   a. For the IWPCA claim, all current and former delivery drivers who provided delivery services in the State of Illinois for AN Enterprise between March 24, 2013 and the present.

   b. For the Truth-in-Leasing claim, all persons who have performed truck driving services for Defendant AN Enterprises subject to a lease agreement with AN Enterprises at any time between March 24, 2019 and the present.

58. This case may be maintained properly as a class action under Fed. R. Civ. P. 23(a) and 23(b)(3).

59. The class is so numerous that joinder of all potential class members is impracticable. On information and belief, the class is comprised of more than one hundred drivers.

60. There are questions of law or fact common to the class that predominate over any individual issues that might exist. Common questions of law and fact include whether Defendants

have misclassified drivers as independent contractors; whether Defendants have failed to pay drivers promised wages; whether Defendants have taken unlawful deductions from drivers' wages and forced drivers to incur expenses which should have properly been borne by Defendants; and whether Defendant AN Enterprise adhered to its obligations under the Truth-in-Leasing regulations.

61. The class claims asserted by Plaintiff are typical of the claims of potential class members. Defendants operate in a highly regulated industry that requires them to maintain standard operating procedures and uniform policies, procedures, and practices and adhere to laws and regulations governing motor carriers. Plaintiffs' and class members' claims for unpaid wages and unlawful deductions should be readily calculable from Defendants' business records.

62. Plaintiffs will fairly and adequately protect and represent the interests of the class. Their interest in challenging the unlawful practices of Defendants motivates them to bring this case as a class action.

63. A class action is superior to other available methods for the fair and efficient adjudication of this controversy. The alternative numerous identical lawsuits alleging similar or identical causes of action would not serve the interests of judicial economy and the prosecution of separate actions by the individual potential class members would create a risk of inconsistent or varying adjudications with respect to individual potential class members that would establish incompatible standards of conduct for Defendants. Moreover, some class members particularly current drivers may be reluctant to bring their claims individually for fear of retaliation by Defendants.

64. Public policy supports the broad remedial purposes of class actions in general and specifically to vindicate the rights afforded by the IWPCA and the Truth-in- Leasing regulations to drivers, whose individual claims may be too small to warrant the expense of litigation.

65. This class action will not be difficult to manage due to the uniformity of claims among the class members and the amenability of wage and hour cases to both class litigation and the use of representative testimony and representative documentary evidence.

66. The contours of the class will be easily defined by reference to business records kept by Defendants.

## COLLECTIVE ACTION ALLEGATIONS

67. Plaintiffs bring Count II of this lawsuit as a collective action on behalf of all individuals who worked as delivery drivers for AN Enterprise during the last three years and who may choose to opt-in to this case.

68. Plaintiffs' FLSA claims should proceed as a collective action on behalf of all similarly situated individuals who worked as delivery drivers for AN Enterprise during the past three years.

69. All potential opt-in Plaintiffs worked pursuant to the common misclassification scheme described above under which Defendants did not pay drivers at least the minimum wage for all hours worked, and therefore they are "similarly situated" as that term is defined in 29 U.S.C. § 216(b).

## COUNT I
## ILLINOIS WAGE PAYMENT AND COLLECTION ACT

70. Plaintiffs re-allege and incorporate by reference all previous paragraphs of this Complaint as if fully rewritten herein.

71. At all relevant times, Plaintiffs and the proposed class members were "employees" of AN Enterprise as defined by the IWPCA.

72. At all relevant times, AN Enterprise and Kostadinka Zagorska were employers of Plaintiffs and the proposed class as defined by the IWPCA.

73. The IWPCA, 820 Ill. Comp. Stat. 115/9, prohibits employers from making deductions from employees' wages.

74. AN Enterprise violated the IWPCA, 820 Ill. Comp. Stat. 115/9, by making unlawful deductions from Plaintiffs' and the proposed class members' wages.

75. AN Enterprise also violated Section 115/9.5 of the IWPCA by failing to reimburse Plaintiffs and other class members who worked for it since January 1, 2019 for expenditures they incurred related to services performed for the Defendants from January 1, 2019 to the present.

76. Kostadinka Zagorska violated the IWPCA, 820 Ill. Comp. Stat. 115/9, by permitting and directing AN Enterprise to make unlawful deductions from Plaintiffs' and the proposed class members' wages, and permitting drivers to incur expenses related to their work for AN Enterprise that should have been borne by Defendants.

77. Plaintiffs and the proposed class members seek all reimbursement for all unlawful deductions taken by Defendants from their wages, and well as unlawful expenses they were forced to incur as part of their work for Defendants.

## COUNT II
## FAIR LABOR STANDARDS ACT CLAIMS

78. Plaintiffs re-allege and incorporate by reference all previous paragraphs of this Complaint as if fully rewritten herein.

79. After accounting for the expenses Plaintiffs and the putative collective members paid that were necessary to perform their job, Defendants failed to pay Plaintiffs and the members of the putative collective an hourly rate of at least the federal minimum wage of $7.25

per hour as required by the FLSA, 29 U.S.C. § 206(a).

80. Defendants' conduct in failing to ensure that its delivery drivers, with whom it has relied upon to perform a critical and integral component of its business services, receive the federal minimum wage, after accounting for the expenses they paid that were necessary to perform their job, was knowing, willful, intentional, and done in bad faith.

81. This claim is brought on behalf of a group of similarly situated individuals who may choose to "opt in" to this case, pursuant to 29 U.S.C. §216(b).

## COUNT III
## TRUTH-IN-LEASING CLAIMS

82. Plaintiff Latipov re-alleges and incorporates by reference all previous paragraphs of this Complaint as if fully rewritten herein.

83. Defendant AN Enterprise is a motor carrier with operating authority granted to it by the DOT.

84. Under the Truth-in-Leasing regulations, an authorized carrier may perform authorized transportation using leased equipment only if the written lease granting the use of the equipment meets the requirements of 49 C.F.R. § 376.12.

85. As alleged, AN Enterprise has violated the TIL regulations by, inter alia, taking unspecified and excessive deductions from drivers' earnings; improperly maintaining drivers' escrow funds; making unlawful deductions from escrow funds; and by failing to include the contents, disclosures, and terms required by the TIL regulations in the drivers' lease agreements.

86. As a result of their failure to comply with the TIL regulations, Plaintiff and the putative class members are entitled to declaratory judgment that AN Enterprise's Independent Contractor Equipment Lease Agreements violate 49 C.F.R. § 376.12.

87. As a result of their failure to comply with the TIL regulations, Plaintiff and the putative class members are entitled to enjoin AN Enterprise from attempting to enforce the Independent Contractor Equipment Lease Agreements.

88. As a direct and proximate result of AN Enterprise's substantial and material failure to adhere to the TIL regulations, AN Enterprise has violated the rights of Plaintiff and the putative class members and has caused Plaintiff and the putative class members economic damages in an amount to be determined at trial.

89. Plaintiff brings this claim pursuant to 49 U.S.C. § 14706(d).

## PRAYER FOR RELIEF

Plaintiffs respectfully request that this Court grant the following relief:

A. Certification of this action as a class action under Rule 23(b)(1), 23(b)(2) and 23(b)(3);

B. Appointing Plaintiffs Orzy Latipov and Umar Nazarov as class representatives and their counsel as class counsel;

C. An order enjoining Defendants from violating the IWPCA;

D. All unpaid wages;

E. Liquidated damages under the FLSA;

F. Restitution for all deductions taken from Plaintiffs' and class members' wages;

G. Restitution for all Defendants' operating expenses that Plaintiffs and class members were forced to bear;

H. An award to Plaintiffs and the Rule 23 class of damages, statutory damages and penalties pursuant to the formula set forth in 820 Ill. Comp. Stat.115/14(a);

I.  Requiring Defendant AN Enterprise to provide each of the drivers an accounting of all transactions with AN Enterprise and provide all documentation necessary to confirm the validity of the computations;

J.  A judgment against Defendant AN Enterprise for all damages that the drivers incurred as a result of its violations of the Truth-in-Leasing regulations, including, but not limited to, restitution for all improper or excessive deductions, chargebacks, or withholdings; all amounts owed in interest on escrow funds, all escrow funds improperly withheld at termination; and other direct and proximate damages;

K.  Pre-and post-judgment interest;

L.  Attorneys' fees and costs, pursuant to the FLSA, IWPCA, and 49 U.S.C. § 14704(e);

M.  Any other relief as this Court deems just and proper.

Dated: March 24, 2023

Respectfully Submitted,

**ORZY LATIPOV** and **UMAR NAZAROV,** individually and on behalf of all others similarly situated,

*Plaintiffs*,

By their attorneys,

/s/ Bradley Manewith

Bradley Manewith, IARDC # 6280535
Lichten & Liss-Riordan, P.C.
500 Lake Cook Rd., Suite 350
Deerfield, IL 60015
Tel. (617) 994-5800
Fax (617) 994-5801
bmanewith@llrlaw.com

                                                            Harold L. Lichten (*pro hac vice*)
Olena Savytska (*pro hac vice*)
Lichten & Liss-Riordan, P.C.
729 Boylston Street, Ste. 2000
Boston, MA 02116
Tel. (617) 994-5800
Fax (617) 994-5801
hlichten@llrlaw.com
osavytska@llrlaw.com