UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ORZY LATIPOV and UMAR NAZAROV, individually and on behalf all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>AN ENTERPRISE INC and KOSTADINKA ZAGORSKA,<br><br>Defendants. | Civil Action No. 1:23-cv-01859 |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR CONDITIONAL CERTIFICATION AND TO FACILITATE NOTICE PURSUANT TO SECTION 216(B) OF THE FAIR LABOR STANDARDS ACT**

**I.     INTRODUCTION**

Plaintiffs Orzy Latipov and Umar Nazarov hereby move this Court for an order granting conditional certification and allowing judicial notice of this action to be provided to potential collective action members informing them of their right to opt in to this case under Section 216(b) of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §201, *et seq*.[1] Plaintiffs worked as delivery drivers for AN Enterprise, Inc ("AN Enterprise"), delivering hazardous materials and other freight for AN Enterprise's clients, such as Fujifilm, Toyota and Tesla in Illinois and throughout the United States. Although Plaintiffs and other delivery drivers working for AN Enterprise were classified as independent contractors, they were in fact employees of AN Enterprise for purposes of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §201 et seq.

The FLSA requires that that employees receive at least the minimum wage for all hours

---

[1] A proposed Notice is attached hereto as **Exhibit A**. A proposed opt-in form is attached hereto as **Exhibit B**.

1

worked. See 29 U.S.C. § 206. An employer may not deduct from employee wages the cost of facilities which primarily benefit the employer if such deductions drive wages below the minimum wage. See Arriaga v. Fla. P. Farms, L.L.C., 305 F.3d 1228, 1236 (11th Cir. 2002); 29 C.F.R. § 531.36(b). Deductions made by employers which take the employees' pay below minimum wage therefore violate the FLSA. Moreover, Department of Labor Regulations require wages to be paid "free and clear," meaning that job-related expenses that are primarily for the benefit of the employer (such as tool and uniforms) cannot be charged to the employee if doing so would cause the employee's pay to drop below the minimum wage. 29 C.F.R. § 531.35. See also Burton v. DRAS Partners, LLC, 2019 WL 5550579, at *2 (N.D. Ill. Oct. 27, 2019). In this case, as set out below, AN Enterprise had a policy of making deductions from delivery drivers' pay for various items, including problem deliveries, accidents, and escrow payments. AN Enterprise also required delivery drivers to incur certain business-related expenses, including cell phones, GPS, gasoline, hotels, and tool repairs. In many weeks, these deductions and/or expenses brought Plaintiffs' pay significantly below minimum wage, in violation of the FLSA. The proposed FLSA collective for which Plaintiffs seek conditional certification is comprised of all delivery drivers who worked for AN Enterprise in the United States between June 2020 and the present and were classified as independent contractors (hereinafter referred to as "delivery drivers").

     Plaintiffs easily meet the lenient evidentiary burden required for conditional certification and issuance of notice under 29 U.S.C. § 216(b). Plaintiffs are entitled to issue notice at an early stage of an FLSA suit, as long as they are able to make "a modest factual showing sufficient to demonstrate that they and potential plaintiffs together were victims of a common policy or plan that violated the law." Girolamo v. Community Physical Therapy & Associates, Ltd., 2016 WL 3693426, at *2 (N.D. Ill. July 12, 2016) (quoting Flores v. Lifeway Foods, Inc., 289 F. Supp. 2d 1042, 1045 (N.D. Ill. 2003)). A conditional class may be certified if plaintiff makes the "modest

showing" required by law even if "[t]he majority of defendants' arguments may indeed support eventual 'decertification' at the second stage." Id. (quoting Bastian v. Apartment Investment and Management Co., 2007 WL 5234235, at *1 (N.D. Ill. Sept. 17, 2007)). "Courts apply the similarly situated requirement 'leniently,' and 'typically' conditionally certify a representative class." Slaughter v. Caidan Mgt. Co., LLC, 317 F. Supp. 3d 981, 988 (N.D. Ill. 2018) (quoting Rottman v. Old Second Bancorp, Inc., 735 F. Supp. 2d 988, 990 (N.D. Ill. 2010)); Solsol v. Scrub, Inc., 2015 WL 1943888, at *2 (N.D. Ill. Apr. 27, 2015) (internal citations omitted)).

"At the initial 'notice stage,' the court does not consider the merits of the named plaintiff's claims, determine credibility, or consider opposing evidence presented by a defendant." Shumate v. Genesco, Inc., 2018 WL 259942, at *2 (S.D. Ind. Jan. 2, 2018) (Young, J.) (quoting Bergman v. Kindred Healthcare, Inc., 949 F. Supp. 2d 852, 855-56 (N.D. Ill. 2013)). "Instead, it analyzes the pleadings and any affidavits to determine whether a modest showing has been made." Shumate, 2018 WL 259942 at *2. Moreover, "a plaintiff seeking conditional certification need not meet the evidentiary standards of Federal Rule of Civil Procedure 56." Id. at *3. Rather, "'it is sufficient that Plaintiff ha[s] shown that [Defendants have a policy] applied uniformly to all potential plaintiffs and that the policy appears to be inconsistent with FLSA regulations.'" Id. at *4 (quoting Binissia v. ABM Indus., Inc., 2014 WL 793111, at *5 (N.D. Ill. Feb. 26, 2014)). Even "[a] conclusory allegation of willfulness 'is sufficient to justify providing notice to the putative class on the basis of the potentially applicable three-year period.'" Id. (quoting Sylvester v. Wintrust Fin. Corp., No. 12 C 01899, 2013 WL 5433593, at *5 (N.D. Ill. Sept. 30, 2013)).

As the Supreme Court has recognized, "[t]he sole consequence of conditional certification is the sending of court-approved written notice to employees, . . . who in turn become parties to a collective action only by filing written consent with the court[.]" Genesis Healthcare Corp. v. Symczyk, 569 U.S. 66, 75 (2013) (citations omitted). Plaintiffs and other delivery drivers who

3

worked for AN Enterprise were improperly classified as independent contractors and did not receive minimum wage for all hours worked as a result of AN Enterprise's compensation policies.[2] AN Enterprise's "common policies" have harmed Plaintiffs and the collective action members in a similar manner, and conditional certification is proper. See, e.g., Brown v. Club Assist Rd. Serv. U.S., Inc., 2013 WL 5304100, at *11 (N.D. Ill. Sept. 19, 2013) (conditional certification of former employee drivers improperly reclassified as independent contractors); Souran v. GrubHub Holdings, Inc., 2017 WL 11594472, at *4 (N.D. Ill. Feb. 3, 2017) (granting conditional certification to GrubHub drivers misclassified as independent contractors); Campbell v. Marshall Int'l, LLC, 623 F. Supp. 3d 927 (N.D. Ill. Aug. 25, 2022) (granting conditional certification to dancers misclassified as independent contractors); Butler v. Am. Cable & Tel., LLC, 2011 WL 4729789, at *1 (N.D. Ill. Oct. 6, 2011) (granting conditional certification to cable technicians improperly classified as independent contractors); see also Kelly v. Bluegreen Corp., 256 F.R.D. 626, 627 (W.D. Wis. 2009) (conditional certification of class of sales representatives misclassified as "exempt"); Betancourt v. Maxim Healthcare Servs., Inc., 2011 WL 1548964, at *1 (N.D. Ill. Apr. 21, 2011) (conditional certification of misclassified recruiters).[3] Notice in this case should issue as soon as possible. Unlike in a Rule 23 class action, a collective action under the FLSA is

---

[2] Specifically, Plaintiffs and other delivery drivers were paid based on a percentage of the freight they delivered, without regard to the number of hours they worked, and had deductions – often totaling thousands of dollars a week – taken out of their pay. As a result, Plaintiffs' pay was significantly below minimum wage for a number of the weeks they worked for AN Enterprise.

[3] Sutton v. Diversity at Work Grp., Inc., 2020 WL 7364535, at *2 (S.D. Ohio Dec. 15, 2020) (conditional certification where independent contractor agreement misclassified delivery drivers as independent contractors); Hose v. Henry Indus., Inc., 49 F. Supp. 3d 906, 908 (D. Kan. 2014) (conditional certification of drivers, some of whom are retained by intermediary contractors, misclassified as independent contractors rather than employees); Holliday v. J S Exp. Inc., 2013 WL 2395333, at *1 (E.D. Mo. May 30, 2013) (class certification of Fleet Drivers providing courier services misclassified as independent contractors); Hager v. Omnicare, Inc., No. 2020 WL 5806627, at *12 (S.D.W. Va. Sept. 29, 2020) (conditional certification of pharmaceutical delivery drivers classified as independent contractors); Roldan v. Davis Bancorp, Inc., 2011 WL 13223731, at *1 (S.D. Fla. July 20, 2011) (class certification of South Florida drivers/couriers misclassified as independent contractors); Collinge v. Intelliquick Delivery, Inc., 2012 WL 3108836, at *1 (D. Ariz. July 31, 2012) (conditional certification of three categories of misclassified delivery drivers at IntelliQuick: freight driver, route drivers, and on-demand drivers).

not "commenced" for opt-in plaintiffs (and the limitations period is not tolled) until his or her "written consent [to join the action] is filed in the court in which the action was commenced." 29 U.S.C. § 256(b); see also 29 U.S.C. § 257 (The "statute of limitations [of] such action shall be considered to have been commenced as to [an opt-in plaintiff] when, and only when, his written consent to become a party plaintiff to the action is filed in the court in which the action was brought."); Madden, 2009 WL 4757269, at *1 ("Collective actions under § 216(b) of the FLSA differ from Fed. R. Civ. P. 23 class actions in that potential participants in a FLSA collective action must join the action by 'opting-in'"). As the Supreme Court explained in Hoffman-LaRoche, Inc. v. Sperling, 493 U.S. 165, 172-73 (1989), the issuance of early notice helps the court manage the case, allowing it to "ascertain the contours of the action at the outset."

This Court should grant Plaintiffs' motion for conditional certification and allow notice to issue to other delivery drivers who have worked for AN Enterprise during the past three years and who were classified as independent contractors because, as set out below, Plaintiffs have met their burden of making a modest factual showing that the Defendants have a common policy of (1) classifying delivery drivers as independent contractors; and (2) making deductions from delivery drivers' pay, and forcing drivers to incur out-of-pocket expenses, which brought delivery drivers' pay below minimum wage in some workweeks.

In connection with conditional certification, Plaintiffs are entitled to discover the names, addresses, telephone numbers, email addresses, and dates of employment of similarly situated delivery drivers to inform them of this pending action. See Campbell, 623 F. Supp. 3d at 936 (ordering defendants to produce names, addresses, e-mails and telephone numbers for collective action members); Nehmelman, 822 F. Supp. 2d at 767 (finding plaintiff was entitled to discover the names, addresses, and telephone numbers of potential class members); Shumate, 2018 WL 259942 at *5 (plaintiff "is entitled to discover the names, addresses, telephone numbers, email

addresses, and dates of employment of similarly situated employees to inform them of this pending action."); Knox v. Jones Grp., 208 F. Supp. 3d 954, 963-64 (S.D. Ind. 2016) (noting that "nowadays, communication through email is the norm") (citation omitted).

## II. FACTUAL BACKGROUND

Defendant AN Enterprise, Inc. ("AN Enterprise") provides delivery services to various companies, including FujiFilm, Toyota, Tesla, and others, in Illinois and throughout the United States. According to its website, AN Enterprise has been a "committed and reputable trucking business for over 15 years", operating in 48 states and is "a leading hazmat shipping carrier across the continental US." AN Enterprise website (attached hereto as Exhibit C). Id. In order to provide these delivery services, AN Enterprise uses drivers like Plaintiffs. Dkt. 17 ¶¶ 10, 12. AN Enterprise's website prominently advertises job openings for delivery drivers. See Ex. C.

While performing delivery services for AN Enterprise, Plaintiffs were classified as independent contractors. Latipov Decl. (attached hereto as Exhibit D) ¶ 2; Nazarov Decl. (attached hereto as Exhibit E) ¶ 2. Although they were classified by AN Enterprise as independent contractors, Plaintiffs were, as a matter of economic reality, employees. Dkt. 17 ¶ 1. Plaintiffs and other delivery drivers were required to undergo a background check and a drug test prior to beginning work for AN Enterprise. Dkt. 17 ¶ 30; Ex. D ¶ 5; Ex. E ¶ 5. Plaintiffs were also required to undergo orientation and safety training, and to complete a written quiz prior to beginning work for AN Enterprise. Ex. D ¶ 6; Ex. E ¶ 5.

Plaintiffs and other delivery drivers were required to have the AN Enterprise logo on their trucks, and were required to follow AN Enterprise's dress code when making deliveries. Ex. D ¶¶ 10-11; Ex. E ¶ 6. The delivery drivers got their delivery assignments from AN Enterprise's dispatchers, and were required to stay in contact with the dispatchers throughout the day, and follow AN Enterprise's instructions regarding pickup, delivery, and the route to take. Dkt. 17 ¶¶

18-19; Ex. D ¶¶ 8-9; Ex. E ¶ 8. Plaintiffs worked for AN Enterprise full time, working up to 70 hours a week. Dkt. 17 ¶ 17; Ex. D ¶ 13; Ex. E ¶ 7. They did not work anywhere else while working for AN Enterprise. Id. AN Enterprise paid Plaintiffs a set rate for their deliveries. Ex. D ¶ 4; Ex. E ¶ 4. AN Enterprise took deductions out of the delivery drivers' pay each week for various items, including traffic accidents, tolls, insurance, problem deliveries, truck rentals, and an escrow deposit. Dkt. 17 ¶¶ 22-23; Ex. D ¶ 15; Ex. E ¶ 10. These deductions totaled hundreds, and sometimes thousands of dollars per week. See Ex. D, Ex. 1; Ex. E, Ex. 1. As a result of these deductions, there were weeks in which Plaintiffs were not paid minimum wage. Ex. D ¶¶ 16, 18-19; Ex. E ¶¶11, 13. In addition, Plaintiffs incurred expenses in connection with their work for AN Enterprise for such items as gas, cell phone payments, repair tools, and GPS, which brought their pay further below minimum wage. Ex. D ¶ 17; Ex. E ¶ 12. For example, during the weeks of April 18, 2022, and June 27, 2022, Latipov was paid less than the minimum wage after AN Enterprise's deductions and his out-of-pocket expenses. Ex. D ¶¶ 18-19. Similarly, during the week of January 24, 2022, Nazarov was paid less than the minimum wage after AN Enterprise's deductions and his out-of-pocket expenses. Ex. E ¶ 13.

### III. ARGUMENT

#### A. The Lenient Standard for Conditional Certification under the FLSA

The FLSA allows workers to bring an action on a collective basis for themselves "and other employees similarly situated." 29 U.S.C. § 216(b). While the FLSA does not define the term "similarly situated," courts "in this district and around the country have settled on a two-step procedure for dealing with collective actions under the FLSA." Rottman, 735 F. Supp. 2d at 990 (quoting Hundt v. DirectSat USA, LLC, 2010 WL 2079585, at *2 (N.D. Ill. May 24, 2010)). At the first step, known as the "notice" stage, "[a] named plaintiff can show that the potential claimants are similarly situated by making a modest factual showing sufficient to demonstrate that

they and potential plaintiffs together were victims of a common policy or plan that violated the law." Flores, 289 F.Supp.2d at 1045 (citing Taillon v. Kohler Rental Power, Inc., 2003 WL 2006593, at *1 (N.D. Ill. Apr.29, 2003)) (internal quotation marks omitted). "Th[e] determination is made using a fairly lenient standard, and typically results in 'conditional certification' of a representative class.'" Comer, 454 F. 3d at 547.

"[D]istrict courts generally allow the lead plaintiffs to 'show that the potential claimants are similarly situated by making a modest factual showing sufficient to demonstrate that they and potential plaintiffs together were victims of a common policy or plan that violated the law.'" Fisher v. Michigan Bell Telephone Co., 665 F. Supp. 2d 819, 825 (E.D. Mich. 2009) (quoting Olivo v. GMAC Mtg. Corp., 374 F. Supp. 2d 545, 548 (E.D. Mich. 2004)). "Since the 'similarly situated' standard is a liberal one, it 'typically results in conditional certification of a representative class.'" Rottman, 735 F. Supp. 2d at 990 (quoting Cameron–Grant v. Maxim Healthcare Services, Inc., 347 F.3d 1240, 1243 n. 2 (11th Cir. 2003) (quotation marks omitted)); Smallwood v. Illinois Bell Telephone Co., 710 F.Supp.2d 746, n. 4 (N.D. Ill. 2010).

Conditional certification typically takes place early on in the case, prior to discovery. See Heckler v. DK Funding, LLC, 502 F. Supp. 2d 777, 779 (N.D. Ill. 2007) ("the court may allow what is sometimes termed pretrial conditional certification, which allows notice of the case to be sent to the similarly situated employees, who have the opportunity to opt in as plaintiffs. The case then proceeds as a collective action through further discovery."); Persin v. CareerBuilder, LLC, 2005 WL 3159684 at *1 (N.D. Ill. Nov. 23, 2005) ("it is not until potential plaintiffs have been given a chance to 'opt-in' to the collective action and discovery is complete that the court more rigorously reviews whether the representative plaintiff and the putative claimants are in fact similarly situated so that the lawsuit may proceed as a collective action.").

As a result, at the conditional certification stage, the court does not evaluate the merits of

the case and does not make credibility determinations. Nicks v. Koch Meat Co., Inc., 265 F. Supp. 3d 841, 849 (N.D. Ill. 2017 (quoting Bergman v. Kindred Healthcare, Inc., 949 F. Supp. 2d 852, 855-56 (N.D. Ill. 2013)) ("At this initial stage, '[t]he court does not make merits determinations, weigh evidence, determine credibility, or specifically consider opposing evidence presented by a defendant.'"); Larsen v. Clearchoice Mobility, Inc., 2011 WL 3047484, at *1 (N.D. Ill. July 25, 2011) ("[T]he court does not resolve factual disputes or decide substantive issues going to the merits."); Nehmelman., 822 F.Supp.2d at 751 ("[T]he court does not consider the merits of a plaintiff's claims, or witness credibility"); see also Betancourt, 2011 WL 1548964, at *7 ("Defendant's argument that plaintiff and the proposed class are not similarly situated with respect to how they actually perform their jobs and the issue of whether defendant properly classifies all or some of its Recruiters as exempt employees are more appropriately decided on a more developed factual record.").

Conditional certification and court-supervised notice are typically granted under § 216(b). Hipp v. Liberty Nat'l Ins. Co., 252 F. 3d 1208, 1218 (11th Cir. 2001). In this case, the remedial purposes of the FLSA, as well as the goals of judicial economy, weigh heavily in favor of certification and issuing notice to all similarly situated delivery drivers who worked for AN Enterprise during the past three years. See Hoffman-La Roche, 493 U.S. at 170. Collective actions benefit the judicial system by enabling the "efficient resolution in one proceeding of common issues of law and fact. . . ." Id. Further, a collective action gives these employees an opportunity to "lower individual costs to vindicate rights by the pooling of resources." Id.

> **B. Plaintiffs have Amply Met their Burden of Production and have a Made a Modest Factual Showing that a Group of Similarly Situated Individuals Exist**

Where, as here, the Plaintiffs have established the existence of common, FLSA-violating policies which applied to the collective action members, conditional certification is warranted. Plaintiffs here have alleged that they and other delivery drivers were misclassified as independent

contractors and were not paid minimum wage during some of the weeks in which they worked for AN Enterprise.[4] Specifically, Plaintiffs have identified AN Enterprise's common policy of (1) misclassifying delivery drivers as independent contractors; and (2) taking deductions from their pay for various items, including accidents, insurance, truck rentals, and problem deliveries, which totaled hundreds or even thousands of dollars a week, and forcing them to incur out-of-pocket expenses, which, in some weeks, brought the drivers' compensation below minimum wage. This common policy is corroborated by Plaintiffs' declarations and the accompanying wage statements. See Exs. D-E.

AN Enterprise's classification and compensation policies, which are at issue in this case, are attested to by the detailed Amended Complaint (Dkt. 17) and supporting declarations of Orzy Latipov and Umar Nazarov, which demonstrate AN Enterprise's uniform classification and compensation policies.[5] Specifically, Latipov and Nazarov each attest that it was AN Enterprise's policy to take weekly deductions from their pay which, in some weeks, brought their pay below minimum wage. (Exs. D-E.) Plaintiffs' pay was further reduced below minimum wage in some weeks because it was AN Enterprise's policy to require drivers to pay out of pocket for various business expenses, including a cell phone plan, GPS, gas, hotels, and to repair tools. Id. Plaintiffs' testimony is supported by the pay statements attached to their declarations Id.

Courts in the Seventh Circuit and beyond have granted conditional certification in misclassification cases involving delivery drivers subjected to common employer policies

---

[4] Courts in this Circuit do not require a showing of interest at the conditional certification stage. As one court explained, "Defendants' argument that [plaintiff] must produce evidence that other employees wish to join the class before the class notice may be sent puts the cart before the horse." Heckler, 502 F. Supp. 2d at 780.

[5] At the conditional certification stage, "[t]he Court analyzes the pleadings and any affidavits to determine whether [the required] modest showing is made." Williams v. Angie's List, Inc., 223 F. Supp. 3d 779, 783 (S.D. Ind. 2016) (citing Knox, 208 F.Supp.3d at 958).

notwithstanding the far-reaching geographic areas that these drivers are based out of and service in the scope of their employment. In Brown, this court conditionally certified a class of emergency roadside drivers, who were formerly classified as hourly employees but had their employment status changed to independent contractors. 2013 WL 5304100, at *1-*2. As a result of the change, the drivers were subject to a multitude of new restrictions, requirements, and fees to continue delivering for their employer. Id. at *2-*3. Plaintiffs met their burden of demonstrating that they were subject to a common policy through "sworn declarations attesting to the degree of control that Defendant maintained over their work and…that Defendant used a form contract to dictate the terms of its relationship with all of its drivers." Id. at *13. see also Souran, 2017 WL 11594472, at *4 ("the alleged FLSA infraction and resulting injury sustained by the putative class members is the same, i.e., the policy of incorrectly classifying Plaintiffs as independent contractors resulting in Defendants' failure to compensate drivers at minimum wage and for overtime"); Hall v. U.S. Cargo & Courier Serv., LLC, 299 F. Supp. 3d 888, 896 (S.D. Ohio 2018) ("all I.C. Drivers were required to comply with Defendant's grooming and appearance standards . . . receive[d] routes directly from Defendant . . . [were] paid . . . at a rate determined by Defendant…[and] signed the same Agreement"); Collinge, 2012 WL 3108836, at *3 ("the declarations of the named plaintiffs support their position that they, and others in the proposed class, were subjected to a single policy or plan that included misclassification as independent contractors and did not include overtime pay or, in some cases, minimum wages"); Martinez v. First Class Interiors of Naples, LLC, 2019 WL 4242409, at *7 (M.D. Tenn. Sept. 6, 2019) ("The Court finds that Plaintiffs have sufficiently alleged that they are similarly situated to some putative members of the Last Paycheck Class . . . the claims of the Last Paycheck Class will proceed under a single theory [] — that Defendants' decision not to pay members of the Last Paycheck Class for their last two weeks of work . . .

11

amounts to a minimum wage violation under the FLSA.").[6]

Moreover, the scope of the proposed collective is proper. See Holliday, 2013 WL 2395333 at *7 (certifying class of drivers employed in 13 different states who "have made substantial allegations that the putative class of courier or fleet drivers were together the victims of a single decision, policy or plan"); Kelly, 256 F.R.D. at 630-31 (granting conditional certification of sales representatives at all 26 defendant sales centers rather than geographically limiting to the four sales centers where declarants worked in Wisconsin, Georgia, Pennsylvania, and South Carolina due to evidence of a company-wide policy that led to the violations because "Where an apparent company-wide policy is behind the alleged FLSA violations, the plaintiff seeking certification for a company-wide class action should not be required to collect specific violations from each location or from each state before seeking authorization to provide notice to employees from all locations"); Kurgan v. Chiro One Wellness Centers LLC, 2014 WL 642092, at *4 (N.D. Ill. Feb. 19, 2014) (certifying class of workers at 75 wellness centers in Illinois, Kentucky, and Texas finding that "geographic commonality is not necessary to satisfy the FLSA collective action's 'similarly situated' requirement…. Rather, the focus is on whether the employees were affected by a common policy"); Grosscup v. KPW Mgmt., Inc., 261 F. Supp. 3d 867, 875 (N.D. Ill. 2017) (conditional certification granted because plaintiffs "made the required "modest" showing of a common policy among the defendants' 23 franchise locations" in Illinois and Maryland).

---

[6] Courts in this District have additionally granted conditional certification in cases alleging misclassification of other types of workers when there has been sufficient showing of a common employer policy or plan that violated the law. See Campbell, 623 F.Supp.3d at 931 (common practice in violation of the FLSA by misclassifying dancers); Russell v. Illinois Bell Tel. Co., 575 F. Supp. 2d 930, 937 (N.D. Ill. 2008) (finding sufficient evidence that "call center employees were subject to a common policy requiring them to work before and after their tours and during their paid breaks and that they did not receive overtime compensation for doing so" to grant conditional certification); Lechuga v. Elite Eng'g, Inc., 503 F. Supp. 3d 741, 743 (N.D. Ill. 2020) (granting conditional certification of misclassified cable technicians); Dennis v. Greatland Home Health Servs., Inc., 438 F. Supp. 3d 898, 900 (N.D. Ill. 2020) (granting conditional certification of class of home health care nurses for common practice of "paying plaintiff and 30-50 other Clinicians a set rate for each home visit, an hourly rate for training and staff meetings, and not compensating them for tasks related to patient care and documentation outside of home visits").

### C. Plaintiffs' Proposed Notice and Plan of Distribution is Proper

The Court should approve Plaintiffs' proposed notice plan. Plaintiffs' proposed Notice, attached as **Exhibit A**, as "timely, accurate and informative." *Hoffmann-La Roche*, 493 U.S. at 172. The format of the notice proposed by Plaintiff in this case has been approved by a number of courts around the country. The "efficiencies enabled by [collective action] can only be realized if 'employees receiv[e] accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate." Knox, 208 F. Supp. 3d at 963. In Cobb, the court approved notice to members of the collective via U.S. Mail, a case website, and e-mail communications. 2020 WL 4351349, at *4.

Plaintiffs seek leave to send the notice and consent form by First Class Mail, e-mail[7] and text message[8] to all individuals who have worked as delivery drivers for AN Enterprise within the last three years[9] and who were classified as independent contractors.

---

[7] E-mail is increasingly recognized by courts as an effective method for providing notice. See, e.g., Syed v. M-I, L.L.C., 2014 WL 6685966, at *8 (E.D. Cal. Nov. 26, 2014) (stating: "email is an increasingly important means of contact" and ordering that notice be sent via U.S. Mail and email); Guy v. Casal Institute of Nevada, LLC, 2014 WL 1899006 (D. Nev. May 12, 2014) ("email is an efficient, reasonable, and low cost supplemental form of notice"); In re Deloitte & Touche, LLP Overtime Litig., 2012 WL 340114, at *2 (S.D.N.Y. Jan. 17, 2012) (granting request for notice by e-mail); Snively v. Peak Pressure Control, LLC, 174 F. Supp. 3d 953, 962 (W.D. Tex. 2016) (same); Butler v. DirectSAT USA, LLC, 876 F. Supp. 2d 560, 575 (D. Md. 2012) (same).

[8] A number of courts in recent years have recognized that notice by text message is an appropriate and effective way of informing them of their right to opt in to a case under the FLSA and have approved such notice. See, e.g., Campbell, 623 F.Supp.3d at 935 (citing Dennis, 438 F. Supp. 3d at 902) ("any moderate intrusion caused by such a text message [or email] is outweighed by the interest in apprising all potential class members of this action."); Avendano v. Averus, Inc., No. 14-cv-01614 (D. Colo. Oct. 25, 2016); Vasto v. Credico (USA) LLC, 2016 WL 2658172, at *16 (S.D.N.Y. May 5, 2016) (approving notice by mail, e-mail and text message); Eley v. Stadium Group, LLC, 2015 WL 5611331, at *3 (D. D.C. Sept. 22, 2015) (approving distribution of FLSA collective action notices via mail, email and text message). Moreover, According to a Pew Research Institute report, approximately 36 million Americans move each year and often take their cell phone numbers with them: 10 percent of U.S. adults have cell phone numbers that don't match the state they live in; and 40 percent of urban dwellers have a number that doesn't match the city where they livehttps://pewrsr.ch/2Ua8kht (last visited April 25, 2023).

[9] A three-year notice period is proper at the conditional certification stage where, as here, Plaintiffs allege a "willful" violation of the FLSA. See, e.g., Frebes v. Mask Rests., LLC, 2014 U.S. Dist. LEXIS 63531, at *12 (N.D. Ill. May 8, 2014) ("because there is not a high bar for giving notice under the [FLSA's] three-year statute of limitations, we will apply a three-year statute of limitations at this [i.e., notice] stage in the litigation."

In order to effectuate this notice, Plaintiffs request that the Court order Defendants to produce, within 14 days of its Order granting conditional certification, the names, last known mailing and email addresses, and telephone numbers for all of these individuals. Courts granting conditional certification routinely order defendants to produce this information to facilitate notice to the collective.[10] Once Defendants have produced the Collective List and Notices have been issued, collective action members should have 90 days to return a signed consent form.[11] Finally, Plaintiffs request that a reminder notice be sent 45 days prior to the close of the opt-in period.[12]

## IV    CONCLUSION

For the foregoing reasons, the Court should grant Plaintiffs' Motion for Conditional certification on an expedited basis and authorize Plaintiffs to issue notice of this action to all delivery drivers who worked for AN Enterprise in the United States during the past three years and were classified as independent contractors.

---

[10] See Sylvester, 2013 WL 5433593, at *6 ("the defendants should produce the names, unique employee ID numbers, addresses, and telephone numbers of all potential opt-in class members to the plaintiffs' counsel."); Nehmelman, 822 F. Supp. 2d at 767 (ordering defendants to provide "names, addresses, email addresses and telephone numbers" for potential opt-ins to plaintiffs).

[11] See, e.g., Imel, 2020 WL 2840022 at *7 (providing for 60 days' notice); Swarthout, 2011 WL 6152347 at *5 (finding a 90–day response time is not inappropriate or excessive); see also Benion v. Lecom, Inc., No. 15-14367, 2016 WL 2801562, at *11 (E.D. Mich. May 13, 2016) (citing Hoffmann-La Roche, 493 U.S. at 170) (approving 90-day notice period proposed by the plaintiffs).

[12] "[R]eminder notices are regularly authorized because they further '[t]he purpose of a step-one notice,' which is 'to inform potential class members of their rights.'" Campbell, 623 F.Supp.3d at 935 (internal quotes omitted).

June 21, 2023                                    Respectfully submitted,

/s/ Bradley Manewith

Bradley Manewith, IARDC # 6280535
Lichten & Liss-Riordan, P.C.
500 Lake Cook Rd., Suite 350
Deerfield, IL 60015
Tel. (617) 994-5800
Fax (617) 994-5801
bmanewith@llrlaw.com


Harold L. Lichten (*pro hac vice*)
Olena Savytska (*pro hac vice*)
Lichten & Liss-Riordan, P.C.
729 Boylston Street, Ste. 2000
Boston, MA 02116
Tel. (617) 994-5800
Fax (617) 994-5801
hlichten@llrlaw.com
osavytska@llrlaw.com


*Attorneys for the Plaintiffs and the Proposed FLSA Collective*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the foregoing was served upon all counsel of record through the Court's ECF system this 21 day of June, 2023.

s/ Bradley Manewith
Bradley Manewith
