IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ORZY LATIPOV and UMAR NAZAROV, individually and on behalf of similarly situated persons,<br><br>Plaintiffs,<br><br>v.<br><br>AN ENTERPRISE, INC and KOSTADINKA ZAGORKSA,<br><br>Defendants. | Case No. 23-cv-01859<br><br>Judge Mary M. Rowland |

## MEMORANDUM OPINION AND ORDER

Plaintiffs Orzy Latipov and Umar Nazarov bring a putative collective action against their former employer, AN Enterprise, Inc., and Kostadinka Zagorska, AN's president and secretary, for allegedly violating the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.* and the Illinois Wage Payment and Collection Act 820 ILCS 115, *et seq.* ("IWPCA"). Before the Court is Defendants' motion to dismiss [23] and Plaintiffs' motion for conditional certification and approval of the proposed notice to potential collective action members. [21]. For the reasons set forth below, the Court denies Defendants' motion and grants Plaintiffs' motion.

### I. Factual Background

AN Enterprise, Inc. is a national delivery company. [17], ¶¶ 4, 16. Defendant Zagorska, as AN's president and secretary, implemented company policies on compensation and working conditions. *Id.* ¶29. Plaintiffs worked as delivery drivers for AN: Latipov from March 2021 to October 2022, and Nazarov from March 2020 to

1

February 2022. *Id.* ¶¶ 10, 12, 16. Plaintiffs and other drivers signed an "employment lease agreement" drafted by AN that classified them as independent contractors. *Id.* ¶ 10. Still, AN prescribed many parameters of Plaintiffs' work duties. AN required drivers to regularly report to its facilities in Illinois, display the AN logo on their trucks, wear uniforms when making deliveries for AN, and complete their delivery routes in a specific order and within specific time windows set by AN. *Id.* ¶¶ 17-20. AN dispatchers tracked drivers on delivery routes and often called them on their cell phones to check in or give further instructions. *Id.*

Drivers could not deviate from the schedule made by AN for pickup and delivery. *Id.* ¶ 34. If drivers failed to give adequate notice of requests for time off, AN would subject them to discipline, or even termination. *Id.* AN also required all drivers to pass a background check, drug test, safety training, and a written quiz prior to receiving assignments. *Id.* ¶ 30. Plaintiffs and other drivers worked full-time for AN for up to 70 hours a week. *Id.* ¶ 17. AN paid drivers a set rate per load. *Id.* ¶ 20. Plaintiffs did not perform delivery services for any other company while working for AN, nor did they independently contract with AN customers. *Id.*

AN often deducted from Plaintiffs' wages for costs related to insurance, damaged goods and other delivery issues, truck rentals, and accidents. *Id.* ¶ 22. Deductions varied from paycheck to paycheck and often totaled thousands of dollars a week. ¶¶ 21,25. AN also obliged drivers to put down a mandatory non-recoverable safety deposit. *Id.* ¶ 23. Finally, Plaintiffs and other drivers incurred other unavoidable expenses while making deliveries, such as gas, cell phone payments,

repair tools and servicing, and GPS tracking. AN's policy was to not reimburse drivers for out-of-pocket expenses, even though costs typically amounted to $3,500 per week. *Id.* ¶ 24. Plaintiffs allege that the deductions and out-of-pocket expenses had the combined effect of lowering their take-home pay below minimum wage, *id.* ¶ 25, in violation of the FLSA.

On March 24, 2023, Plaintiffs brought a putative class action against Defendants over AN's wage practices. [1]. Plaintiffs filed an amended complaint on May 24, 2023. [17]. Plaintiffs bring two counts under the Illinois Wage Payment and Collection Act (IWPCA), challenging AN's deductions from employee wages (Count I) and AN's failure to reimburse drivers' expenses (Count II). Plaintiffs also claim that Defendants violated the minimum wage provisions under the Fair Labor Standards Act, 29 U.S.C. § 206(a) (Count III). Plaintiffs now seek to conditionally certify, pursuant to 16(b) of the FLSA, all other delivery drivers who worked for AN Enterprise in the last three years and were classified as independent contractors. [21]. Defendants oppose the motion [30] and separately move to dismiss Count II for failure to state a claim and move to dismiss Latipov's claims for lack of standing. [23].

## II. Motion to Dismiss

### A. Legal Standard

A motion to dismiss tests the sufficiency of a complaint, not the merits of the case. *Gibson v. City of Chicago,* 910 F.2d 1510, 1520 (7th Cir. 1990). Federal Rule of Civil Procedure 12(b)(1) "provides for dismissal of a claim based on lack of subject matter jurisdiction, including lack of standing." *Stubenfield v. Chi. Housing Auth.*, 6

F. Supp. 3d 779, 782 (N.D. Ill. 2013) (citing *Retired Chicago Police Ass'n. v. City of Chicago*, 76 F.3d 856 (7th Cir. 1996)). When bringing a facial challenge to subject matter jurisdiction under Rule 12(b)(1) "the district court must accept as true all material allegations of the complaint, drawing all reasonable inferences therefrom in the plaintiff's favor, unless standing is challenged as a factual matter." *Remijas v. Neiman Marcus Group, LLC*, 794 F.3d 688, 691 (7th Cir. 2015).

To survive a motion to dismiss under Rule 12(b)(6), meanwhile, "the complaint must provide enough factual information to state a claim to relief that is plausible on its face and raise a right to relief above the speculative level." *Haywood v. Massage Envy Franchising*, LLC, 887 F.3d 329, 333 (7th Cir. 2018) (quoting *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 736 (7th Cir. 2014)); *see also* Fed. R. Civ. P. 8(a)(2) (requiring a complaint to contain a "short and plain statement of the claim showing that the pleader is entitled to relief"). A court deciding a Rule 12(b)(6) motion "construe[s] the complaint in the light most favorable to the plaintiff, accept[s] all well-pleaded facts as true, and draw[s] all reasonable inferences in the plaintiff's favor." *Lax v. Mayorkas*, 20 F.4th 1178, 1181 (7th Cir. 2021). However, the court need not accept as true "statements of law or unsupported conclusory factual allegations." *Id.* (quoting Bilek v. Fed. Ins. Co., 8 F.4th 581, 586 (7th Cir. 2021)). Detailed factual allegations are not needed but the standard "require[s] 'more than mere labels and conclusions or a formulaic recitation of the elements of a cause of action to be considered adequate.'" *Sevugan v. Direct Energy Servs.*, LLC, 931 F.3d 610, 614 (7th Cir. 2019) (quoting *Bell v. City of Chicago*, 835 F.3d 736, 738 (7th Cir. 2016)).

Dismissal for failure to state a claim is proper "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007).

### B. Latipov's Standing to Sue

Defendants argue that Latipov lacks standing to sue because AN did not contract with Latipov, but rather with a third-party corporate entity he owned. AN paid Latipov through that corporation. [22-4]. Defendants contend the written agreement between AN and Latipov's corporation negates the possibility of an employment relationship with Latipov as an individual, and thus Latipov is unable to sue as an "employee" under the FLSA or IWPCA.

Article III of the Constitution authorizes federal courts to only adjudicate actual cases or controversies. U.S. CONST. art. III, § 2. The requirements of Article III standing are threefold: (1) an injury in-fact; (2) fairly traceable to the defendant's action; and (3) capable of being redressed by a favorable decision from the court. *Parvati Corp. v. City of Oak Forest*, Ill., 630 F.3d 512, 516. (7th Cir. 2010) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992)).

Here, Latipov alleges that Defendants unlawfully deducted from his wages and failed to reimburse him. He further alleges that because of these actions, in certain weeks his pay fell below the required minimum wage. These are three well-pled, concrete, and particularized injuries of fact. Whether Latipov's incorporation precludes him from recovery for those injuries is a determination of his employment

5

status under relevant federal and state law. Defendants ultimately raise a question of the merits of Latipov's claims, not this Court's jurisdiction to hear them.[1] "It is best to confine the term "standing" to the Article III inquiry and thus to keep it separate from the plaintiff's entitlement to relief or her ability to satisfy the [class certification] criteria." *Arrerola v. Godinez*, 546 F.3d 788, 795 (7th Cir. 2008). Latipov has adequate standing to bring his FLSA and IWCPA claims.

### C. ICWPA Reimbursement Claim

Count II alleges Defendants failed to reimburse necessary expenses in violation of the IWPCA. The IWCPA "provides employees with a cause of action against employers for the timely and complete payment of earned wages." *Enger*, 812 F.3d at 568 (7th Cir. 2016) (citing 820 ILCS 115/3). Under the IWCPA, employers must "reimburse an employee for all necessary expenditures or losses incurred by the employee within the employee's scope of employment and directly related to services performed for the employer." 820 ILCS 115/9.5. "Necessary expenditures" include "all reasonable expenditures or losses required of the employee in the discharge of

---

[1] Courts in this district agree that the existence of an "employer-employee" relationship between a company and an incorporated employee goes to the merits of an FLSA claim, not a plaintiff's standing. *Brown v. ABM Indus., Inc.*, 15-CV-6729, 2015 WL 7731946, at *3 (N.D. Ill. Dec. 1, 2015); *Dobrov v. Hi-Tech Paintless Dent Repair, Inc.*; 20-CV-00314, Dkt. 29 (N.D. Ill. May 18, 2020). In general, "status as an employee for purposes of the FLSA depends on the totality of the circumstances" and is not assessed as a jurisdictional issue. *Brown v. Club Assist Rd. Serv. U.S., Inc.*, 12-CV-5710, 2013 WL 5304100, at *5 (N.D. Ill. Sept. 19, 2013) (quoting *Vanskike v. Peters*, 974 F.2d 806 808 (7th Cir. 1992) (cleaned up). So too under the IWCPA: incorporated parties have standing to sue as employees under the statute. *E.g., Bruger v. Olero, Inc.*, 434 F.Supp. 3d 647, 652 (N.D. Ill. 2020) (quoting *Zabinsky v. Gelber Grp., Inc.*, 347 Ill. App. 3d 243, 283 Ill.Dec. 61, 807 N.E.2d 666, 671 (2004)) (cleaned up); *Johnson v. Diakon Logistics*, 16-CV-06776, 2018 WL 1519157 (N.D. Ill. Mar. 28, 2018); *Hill v. Cargo Runner Co.*, 22-CV-00910, 2023 WL 6213574, at *14 (N.D. Ill. Sept. 25, 2023) (rejecting employers' "end-runs" and finding implicit employment agreement between incorporated driver and delivery company); *Diakon*, 2018 WL 1519157, at *9 (same); *Bruger*, 434 F.Supp. 3d, at 655 ("[T]he fact that a truck driver had incorporated does not "significantly alter the [IWCPA] analysis").

employment duties and that inure to the primary benefit of the employer." *Id*. The same provision also requires employees to "submit any necessary expenditure with appropriate supporting documentation *within 30 calendar days* after incurring the expense, except that an employer may provide additional time for submitting requests for reimbursement in a written expense reimbursement policy." *Id* (emphasis added).

Defendants argue that named Plaintiffs' failure-to-reimburse claim should be dismissed for two reasons: the expenses Plaintiffs incurred were not for AN's primary benefit, and Plaintiffs did not submit proof of their expenses within 30 days of incurring them. For the reasons stated below, Court rejects both arguments.

Defendants assert that because Plaintiffs do not specifically allege that their expenses—gas, cell phone payments, repair tools, and GPS—primarily benefitted AN, they omit an element of a failure-to-reimburse claim. The Court disagrees. When deciding a motion to dismiss, the Court draws all reasonable inferences in plaintiffs' favor. *Wagner v. Teva Pharm. USA, Inc.*, 840 F.3d 355, 358 (7th Cir. 2016). Plaintiffs allege that they incurred the expenses listed above "in order to perform [their] duties." [17] ¶ 24. That is, Plaintiffs spent out-of-pocket to complete assignments as AN ordered, not to enrich themselves. It is a reasonable inference at this stage that the itemized costs alleged were incurred for the "primary benefit" of Defendant.

Next, Defendants argue that Plaintiffs fail to allege that they submitted documentation of expenses within 30 days of incurring them. Plaintiffs respond they did not do so because Defendant had a policy prohibiting reimbursement of expenses

7

and their signed employment agreements stated that drivers were personally responsible for all expenses. [29] at 10. Defendants urge the Court to read the statutory 30-day requirement as a "mandatory duty" on employees, and Plaintiffs' failure to plead they met the deadline therefore precludes relief. Plaintiffs respond that the IWCPA's broad remedial purpose requires denial of the motion to dismiss.

The relationship between the IWCPA reimbursement provision prescribing employees' timely submission of expenses and employers' duty to reimburse appears to be a question of first impression. This is a misclassification case, where Plaintiffs plausibly allege they were misclassified as independent contractors and therefore denied the protections guaranteed to employees: protections embodied in the IWCPA and the FLSA. Moreover, the contractual arrangement with Defendants required Plaintiffs to pay their own expenses. [17] ¶¶ 25, 63-64. Plaintiffs have pled sufficient facts to give Defendants fair notice of the claim. *Prokhorov v. Kazniyenko*, 20-CV-06807, Dkt. 25, at 3 (May 5, 2021) (granting FLSA motion to certify class on misclassification theory and allowing IWPCA reimbursement claim to survive motion to dismiss); *Plestsov v. GTS Transportation Corp.,* 2021 WL 534666, at *2 (N.D. Ill. Feb. 12, 2021) (same). Questions of statutory construction,[2] including whether the

---

[2] *See Bd. Of Educ. Of Waukegan Cmty. Unit Sch. Dist. 60 v. Illinois State Charter Sch. Comm'n*, 2018 IL App (1st) 162084, ¶ 68, 97 N.E.3d 85, 102. (citing *People v. Robinson*, 217 Ill. 2d 43, 54, 298 Ill.Dec. 37, 838 N.E.2d 930 (2005) ("Therefore, under the mandatory directory dichotomy of statutory construction, it is not the use of obligatory language, such as the word "shall," that determines whether a statutory command is mandatory or directory, but rather whether noncompliance with such language dictates a resulting consequence").

8

failure to submit documentation is an affirmative defense,[3] will be resolved at a later date following discovery and briefing.

Here, the pleadings plausibly allege that Plaintiffs were not reimbursed "necessary expenses" because they were misclassified and therefore prevented from submitting requests for reimbursement. At this early stage, the Court will not dismiss the claim on this basis.

### III. Motion for Conditional Class Certification

Plaintiffs move to conditionally certify a class of all other delivery drivers who worked for AN Enterprise in the last three years and were classified as independent contractors. [21]. Plaintiffs identify two common policies that bind the drivers together: 1) AN misclassified them as independent contractors instead of employees, and 2) AN made unlawful deductions from their wages which, in some weeks, brought their pay below minimum wage.

Defendants oppose conditional certification for three reasons: 1) named Plaintiffs do not have standing to join the proposed class; 2) named Plaintiffs and the employees they seek to represent are not "similarly situated"; 3) Plaintiffs have not shown they were subject to a "common policy" in violation of the FLSA. The Court finds these arguments unavailing.

#### A. Legal Standard

---

[3] *Winforge, Inc. v. Coachmen Indus., Inc.*, 691 F.3d 856, 872 (7th Cir. 2012) (describing two approaches to determine whether a defense not specifically enumerated in Rule 8(c) is an affirmative defense: (a) "if the defendant bears the burden of proof" under state law, or (b) "if it [does] not controvert the plaintiff's proof."); *Doe v. GTE Corp.*, 347 F.3d 655, 657 (7th Cir. 2003) ("Affirmative defenses do not justify dismissal under Rule 12(b)(6).").

9

Section 216(b) of the FLSA "gives employees the right to bring their FLSA claims through a 'collective action on behalf of themselves and other 'similarly situated' employees." *Alvarez v. City of Chi.*, 605 F.3d 445, 448 (7th Cir. 2010) (citing 29 U.S.C. § 216(b)). Because FLSA lawsuits cannot proceed as class actions, "they are opt-in representative actions." *Schaefer v. Walker Bros. Enterprises, Inc.*, 829 F.3d 551, 553 (7th Cir. 2016).

The FLSA does not lay out collective action procedures. Therefore, district courts have "wide discretion" to determine how these suits should proceed. *Weil v. Metal Technologies, Inc.*, 925 F.3d 352, 357 (7th Cir. 2019) (citing *Alvarez*, 605 F.3d at 449). Courts in this district generally employ a two-step process. Here at step one, the conditional certification stage, a plaintiff "must show that there are similarly situated employees who are potential claimants." *See Russell v. Ill. Bell. Tel. Co.*, 575 F. Supp. 2d. 930, 933 (N.D. Ill. 2008). "The conditional approval process is a mechanism used by district courts to establish whether potential plaintiffs in the FLSA collective action should be sent a notice of their eligibility to participate and given the opportunity to opt in to the collective action." *Ervin v. OS Rest. Servs., Inc.*, 632 F.3d 971, 974 (7th Cir. 2011). Plaintiffs' burden is to make a "modest factual showing sufficient to demonstrate that they and potential plaintiffs together were victims of a common policy or plan that violated the law." *Russell*, 575 F. Supp. 2d. at 933. To decide whether plaintiffs meet this burden, courts employ a "lenient interpretation" of the term "similarly situated". *Ivery v. RMH Franchise Corp.*, 280 F. Supp. 3d 1121, 1133 (N.D. Ill. 2017).

10

To meet the modest factual showing standard, plaintiffs must provide "some evidence in the form of affidavits, declarations, deposition testimony, or other documents to support the allegations that other similarly situated employees were subjected to a common policy that violated the law." *Pieksma v. Bridgeview Bank Mortg. Co., LLC*, 2016 U.S. Dist. LEXIS 177177, at *1 (N.D. Ill. Dec. 22, 2016) (internal quotations omitted). However, conditional certification is not automatic and to proceed as a collective action, plaintiffs must "demonstrate similarity among the situations of each plaintiff beyond simply claiming that the FLSA has been violated; an identifiable factual nexus that binds the plaintiffs together as victims of a particular violation of the overtime laws generally must be present." *Briggs v. PNC Fin. Servs. Grp., Inc.*, 2016 U.S. Dist. LEXIS 33703, at *2 (N.D. Ill. Mar. 16, 2016) (citations omitted). If plaintiffs can show that they and others are similarly situated, the court may "conditionally certify the case as a collective action and allow notice of the case to be sent to similarly situated employees who may then opt in." *Grosscup v. KPW Mgmt., Inc.*, 261 F. Supp. 3d 867, 870 (N.D. Ill. 2017).

Importantly, the merits are not decided at the first stage. The court "does not make merits determinations, weigh evidence, determine credibility, or specifically consider opposing evidence presented by a Defendant." *Bergman v. Kindred Healthcare, Inc.*, 949 F. Supp. 2d 852, 855–56 (N.D. Ill. 2013) (citation omitted); *Williams v. TopHat Logistical Sols., LLC*, 23 C 1573, 2023 WL 8190366 (N.D. Ill. Nov. 27, 2023), at *7 (collecting cases) ("[C]ourts in this district . . . consistently decline to resolve factual disputes at this stage of conditional certification.").

11

More substantive, stringent analysis follows in the second step of the certification process. "[F]ollowing the completion of the opt-in process and further discovery, the Defendant may ask the Court to reevaluate the conditional certification to determine whether there is sufficient similarity between the named and opt-in plaintiffs to allow the matter to proceed to trial on a collective basis." *Russell*, 575 F. Supp. 2d at 933 (internal quotations and citations omitted).

### B. Named Plaintiffs' Standing and Membership in the Proposed Class

Defendants reargue that incorporated truck drivers, including Latipov as named Plaintiff, do not have standing to sue for unpaid wages that AN owed to the corporations. Once again, this is not a question of standing, but whether opt-in plaintiffs have an employer-employee relationship with Defendants under the FLSA. Courts agree that this is a fact-intensive merits issue not appropriate for the first step of certification. *Hose v. Henry Indus., Inc.*, 49 F.Supp.3d 906, 916-17 (D. Kan. 2014); *Pena v. Handy Wash, Inc.*, 28 F.Supp.3d 1289, 1302 (S.D. Fla. 2014); *Ward*, 2018 WL 1604622, at *4.

In any case, courts construe FLSA definitions liberally in light of the legislation's remedial purpose. *Koch v. Jerry W. Bailey Trucking, Inc.*, 482 F.Supp.3d 784, 793 (N.D. Ind. 2020) (citing *Mitchell v. Lublin McGaughy & Assoc.*, 358 U.S. 207, 79 S.Ct. 260, 3 L.Ed.2d 243 (1959)). This permissive attitude extends to the analysis of the employer-employee relationship, especially at the notice stage. *See, e.g., Lee v. ABC Carpet & Home*, 236 F.R.D. 193 (S.D.N.Y. 2006) (allowing corporations to be

included in the pool of opt-in plaintiffs "in light of the remedial purpose of the FLSA"). Thus, the Court will not deny certification at the notice stage due to the issue of potential plaintiffs' incorporation or labels as independent contractors.

### C. "Similarly Situated"

Defendants assert that the employment relationship between AN and each driver differs substantially, such that named Plaintiffs and potential opt-in plaintiffs are not "similarly situated" enough to certify the class. Defendants emphasize that some drivers leased trucks owned by AN, while other drivers worked as "owner-operators" using their own vehicles and did not suffer deductions from their wages for truck payments. [30] at 5-8. Defendants also highlight other discrepancies such as drivers' personal discretion over their routes and rest breaks. *Id.* at 7, 10.

These differences do not undercut the core responsibilities shared by Latipov, Nazarov, and potential plaintiffs. Both named Plaintiffs took assignments from AN dispatchers and made deliveries according to the company's instructions. [22-4] ¶¶ 3, 8, 9 (Latipov Aff.); [22-5] ¶ 3, 9 (Nazarov Aff.). Both also effectively drove full time for the company. [22-4] ¶¶ 13-14; [22-5] ¶ 9. Potential plaintiffs do not need to have "identical positions with identical titles, functions, or pay" in order to send notice of class certification, "they just need[] to perform the same general job." *Nicks v. Koch Meat Co., Inc.*, 265 F. Supp. 3d 841, 854 (N.D. Ill. 2017) (citing *Jirak v. Abbott Lab'ys., Inc.*, 566 F. Supp. 2d 845, 847 (N.D. Ill. 2008). Here, Plaintiffs and other drivers all made deliveries for AN. "Economic and/or logistical differences between owner

13

operators and company drivers" are not cause to deny certification. *Dawkins v. NR 1 Transp., Inc.*, 20-CV-4063, 2021 WL 4125086, at *12 (N.D. Ill. Sept. 8, 2021). As for Defendants' evidence to the contrary, the Court declines to resolve factual disputes at this stage of certification. *Dennis v. Greatland Home Health Services, Inc.*, 438 F. Supp. 3d 898, 900 (N.D. Ill. 2020).

Plaintiffs have also demonstrated the existence of a common policy. Latipov and Nazarov both attested in signed declarations that: 1) AN classified them as independent contractors. [22-4] ¶ 2; [22-5] ¶ 2; 2) AN made deductions from their pay, be it for truck lease payments [22-4] ¶ 7, or other expenses such as accidents, tolls, or delivery fees. *Id.* ¶ 15; [22-5] ¶ 10; and 3) these deductions resulted in them being paid under minimum wage for all hours worked. [22-4] ¶ 16; [22-5] ¶ 11. At the conditional certification stage plaintiffs can support their theory of a common policy with evidence such as "affidavits, declarations, [and] deposition testimony," which Latipov and Nazarov have provided. *Pieksma v. Bridgeview Bank Mortg. Co., LLC*, 2016 U.S. Dist. LEXIS 177177, at *1 (N.D. Ill. Dec. 22, 2016) (internal quotations omitted). This evidence presents an "identifiable factual nexus that binds the plaintiffs together" as subject to misclassification and entitled to assert minimum wage violations. *Williams v. TopHat Logistical Solutions, LLC*, 23-CV-01573, 2023 WL 8190366 (N.D. Ill. Nov. 27, 2023) (quoting *Briggs v. PNC Fin. Servs. Grp., Inc.*, 2016 WL 1043429, at *2 (N.D. Ill. Mar. 16, 2016)).

Defendants further contend that named Plaintiffs have not met their "burden" of pleading misclassification under the FLSA because AN did not wield meaningful

control over drivers' working conditions. This, too, is a merits determination reserved for the second step of certification. District courts across the Seventh Circuit allow FLSA collective actions to proceed from the notice stage on a misclassification theory. *Placide v. Roadrunner Transp. Services Inc.*, 21-CV-1004-JPS, 2022 WL 3682912, at *4 (E.D. Wis. Aug. 25, 2022) (collecting cases).

Named Plaintiffs have made the required "modest factual showing" that there is a class of similarly situated plaintiffs working as drivers for AN. Considering the Plaintiffs' declarations, the label of "independent contractor" is not dispositive. Defendants will have an opportunity to prove that some or all other drivers were in fact independent contractors and not AN employees, but that question is not properly before the Court at this time. At step two, "[d]iscovery will permit the parties to show which putative class members, if any, are exempt, and which are not." *Boltinghouse v. Abbott Labs., Inc.*, 196 F. Supp. 3d 838, 842 (N.D. Ill. 2016). For now, the Court is "tasked only with determining whether it can envision a scenario where Plaintiffs and potential collective action members are similarly situated." *Slaughter v. Caidan Mgmt. Co., LLC*, 317 F. Supp. 3d 981, 989 (N.D. Ill. 2018) (internal quotations omitted).

## CONCLUSION

For the stated reasons, Defendants' motion to dismiss is denied. [23]. Plaintiffs' motion for step-one notice of their Fair Labor Standards Act collective action [21] is granted as follows:

(1) Parties shall submit to the Court's proposed order box (Proposed_Order_Rowland@ilnd.uscourts.gov), a proposed agreed confidentiality order on or before March 1, 2024.

(2) Defendants shall produce the names, dates of employment, locations of employment, last known mailing addresses, personal email addresses, and cellular telephone numbers of Defendants' current and former truck drivers who were employed during any week from June 21, 2020 through June 21, 2023, and classified as independent contractors. ("Employee Information").[4]

(3) Defendants shall provide the Employee Information in an Excel spreadsheet that can be used by the Plaintiffs in delivering the Court-approved Notice. If the information is not stored electronically, Defendants shall provide it in written form. This information must be produced to Plaintiffs within 14 days of the entry of this Order.

(4) The Court authorizes that the Notice and Consent Form submitted as Exhibits A and B to Plaintiffs' motion [22] may be sent to those individuals whose names are being provided as required by this Order along with a self-addressed, postage paid return envelope for U.S. Postal Mailing. The Notice and Consent forms shall be mailed by first class mail and may also be sent electronically in the manner described above. The Court authorizes Notices to be sent via text message if and only if both email Notices and mailed Notices are returned undeliverable.

(5) Opt-in collective members are given 90 days after the date the Notice and Consent forms are mailed to file a Consent to Join form opting-in to this litigation. Halfway through the 90-day period, a reminder notice shall issue to Collective Members who have not yet returned Consent to Join Forms, via reminder postcard, email, and text message.

(6) A Consent to Join that is postmarked on the deadline is considered timely. Consents received by mail without postmarks are considered timely if received within five business days of the deadline. Plaintiffs shall provide the Court with a notice indicating the date on which the Notice forms were initially mailed.

(7) Plaintiffs' counsel shall file in the record all such Consent to Join Forms they receive on a weekly basis. Within 10 days after the close of the Opt-In Period, Plaintiffs' counsel will file all consent forms for the Opt-In Plaintiffs.

(8) By June 28, 2024, the Parties shall confer pursuant to Rule 16(b) and prepare an Initial Status Report as provided for on the Court's website.

---

[4] Defendants shall provide the last four of a Collective Members' social security number if the Notice is returned as undeliverable.

E N T E R:

Dated: February 7, 2024

_____
MARY M. ROWLAND
United States District Judge