## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

ORZY LATIPOV and UMAR NAZAROV,
individually & on behalf of others similarly
situated,

                Plaintiffs,

      v.

AN ENTERPRISE INC., and
KOSTADINKA ZAGORSKA,

             Defendants.

Case No. 23 C 1859

Honorable Sunil R. Harjani

### MEMORANDUM OPINION AND ORDER

This case arises from allegations that the Defendants, AN Enterprise and Kostadinka Zagorska, had an unlawful employment practice of misclassifying delivery drivers as independent contractors. Plaintiffs Latipov and Nazarov assert that, based on this misclassification, Defendants: (1) made improper wage deductions under the Illinois Wage Payment and Collection Act; (2) failed to reimburse expenditures under the Illinois Wage Payment and Collection Act; and (3) failed to pay correct wages under the Fair Labor Standards Act. Plaintiffs Latipov and Nazarov now seek to certify a class of:

> All individuals who entered into a contract with AN Enterprise to perform delivery services; who personally made deliveries for AN Enterprise full-time between March 2013 and the present and who were classified as independent contractors.

Defendants challenge the class certification motion by arguing that: (1) the proposed class is overbroad; (2) Plaintiffs cannot satisfy Rule 23(a)'s numerosity, commonality, typicality, and adequacy requirements; and (3) Plaintiffs have not shown that common issues predominate, or a class action is the superior method under Rule 23(b)(3). For the reasons outlined, the Court grants

the motion for class certification in part [142] for a modified class, on the limited Rule 23(c)(4) question outlined below, and denies the remainder of the motion.

## Background

Defendants provide hazmat freight delivery services across the United States. Doc. [143] at Ex. B, Ex. J at 15:10-14. To carry out these services, Defendants hire workers from across the country to drive trucks and make deliveries. *Id.* at Ex. C at ¶¶ 1, 4, Ex. D at ¶¶ 1, 2-3, 15, Ex. E at ¶¶ 1, 2, 17, Ex. F at ¶¶ 1, 2, 15. These workers contract with Defendants: (1) directly; (2) through a self- or co-owned corporate entity; or (3) through a third-party. *See, e.g.*, Doc. [153] at Ex. B at ¶¶ 7, 11-16, 21-23, 34-35, 55-56. The contracts that were signed by these subgroups varied. *Id.* at Ex. B at ¶ 7. For example, an individual contracted directly with Defendants via an Independent Contractor Agreement and agreed to be paid a flat 20% fee of revenue with no deductions for expenses. *Id.* at Ex. B at ¶ 34. Plaintiff Nazarov's Independent Contractor Agreement negotiated a payment to his self-owned corporate entity, Starway Trans, of between 87% and 95% of the revenue received for the operation of his truck, less agreed expenses. *Id.* at Ex. B at ¶ 13, Ex. D. at 53:4-16. When Defendants contracted with third-party entities, they entered a contract for a percentage of the revenue less agreed expenses. *Id.* at Ex. B at ¶ 29. Then, the third-party corporation determined the pay of their drivers separately. *Id.* at Ex. B at ¶ 30. Defendants were not aware of or part of the agreements between the third-party entities and their drivers. *Id.* Defendants classified all drivers, no matter the contractual agreement, as independent contractors. Plaintiffs and proposed class members allege that this classification violated the law and seek class wide redress.

## Discussion

Rule 23 governs the certification of class actions and gives district courts "broad discretion to determine whether certification of a class-action lawsuit is appropriate." *Jacks v. DirectSat USA, LLC*, 118 F.4th 888, 894 (7th Cir. 2024) (cleaned up). "Plaintiffs bear the burden of showing that a proposed class satisfies the Rule 23 requirements, but… [i]t is sufficient if each disputed requirement has been proven by a preponderance of evidence." *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 811 (7th Cir. 2012) (cleaned up). If certified, the certification order must "define the class and the class claims, issues, or defenses, and must appoint class counsel." Fed. R. Civ. P. 23(c)(1)(b).

There are several routes to class certification. A proposed class must first be ascertainable and meet the Rule 23(a) requirements of numerosity, typicality, commonality, and adequacy of representation. Fed. R. Civ. P. 23(a). Then, the proposed class can satisfy either one of the three subsections of Rule 23(b) or Rule 23(c)(4). *See e.g.*, *Jacks*, 118 F.4th at 896. Plaintiffs Latipov and Nazarov seek Rule 23(b)(3) class certification of: All individuals who entered into a contract with AN Enterprise to perform delivery services; who personally made deliveries for AN Enterprise full-time between March 2013 and the present and who were classified as independent contractors.

## Class Ascertainability

A class must first be ascertainable before proceeding to the Rule 23 factors. To determine if a class is ascertainable, district courts must look at if the class can be "defined clearly" with membership based on objective criteria. *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 657 (7th Cir. 2015). Defendants argue the proposed class is too broad because it encompasses: (1) out-of-state

drivers who did no work, or minimum work, in Illinois; and (2) drivers who had no deductions taken or reimbursements given.

The Illinois Wage Payment and Collection Act "applies to all employers and employees in [Illinois]." 820 Ill. Comp. Stat. Ann. 115/1. Defendants argue the proposed class is overly broad because there is no limitation to work performed in Illinois. The Seventh Circuit in *Glass v. Kemper Corporation* found that the Illinois Wage Payment and Collection Act has no exterritorial reach. 133 F.3d 999, 1000 (7th Cir. 1998). In *Glass*, a non-Illinois resident performed all his work in Spain. *Id.* at 1000. The Seventh Circuit held that the Act does not apply to a non-resident who performed all their work outside of Illinois. *Id.* at 1000–01.

However, the Illinois Appellate Circuit, First District, noted in *Watts v. ADDO Management, LLC*, that the Act was amended in 2014, after *Glass*. *See Watts v. ADDO Mgmt., L.L.C.*, 2018 IL App (1st) 170201, at ¶ 20. The amended Act permits jurisdiction over non-resident individuals when there are sufficient contacts with Illinois. *Id.* The amendment also eliminated reference to the amount of work that needed to be performed in Illinois for the Act to apply. *Id.* (*citing* 56 Ill. Admin. Code tit. 56, § 300.440, amended at 38 Ill. Reg. 18517 (eff. Aug. 22, 2014)). Thus, contrary to Defendants' assertion, the Act's application is not reliant on a threshold amount of work being performed in Illinois. If some work is performed in Illinois, the Act applies. *See Watts*, 2018 IL App (1st) 170201, at ¶ 21; *see, e.g., Prokhorov v. IIK Transp., Inc.*, 2024 WL 3694523, at *6 (N.D. Ill. Aug. 7, 2024).

Here, Plaintiffs seek a class of all individuals "who entered into a contract…who personally made deliveries" for Defendants. There is no limitation to where work is performed in Plaintiff's proposed class – a non-Illinois resident who performed only work outside of Illinois could be included. This is too broad, but in situations where there are "minor overbreadth problems that do

not call into question the validity of the class as a whole, the better course is not to deny class certification entirely but to amend the class definition as needed to correct for the overbreadth." *Suchanek v. Sturm Foods, Inc.*, 764 F.3d 750, 757 (7th Cir. 2014) (cleaned up). The question shifts to whether the proposed class can be amended to correct for the overbreadth.

The solution is to limit the class to individuals who "made deliveries *in Illinois* for AN Enterprise." This would include many of the proposed class Plaintiffs, who reside outside of Illinois but performed delivery services in Illinois. *See* Doc. [143] at Ex. C at ¶¶ 1, 4 (resident of North Carolina, delivered in Illinois), Ex. D at ¶¶ 1, 15 (resident of Pennsylvania, delivered in Illinois), Ex. E at ¶¶ 1, 17 (resident of Arizona, delivered in Illinois), Ex. F at ¶¶ 1, 15 (resident of Texas, delivered in Illinois). Amending the class definition would fix the overbreadth of the proposed class and ensure that some work is performed in Illinois, bringing the claims under the Act's jurisdiction. The amendment is also consistent with the trend by courts in this district. *See, e.g.*, *Prokhorov v. IIK Transport*, 2023 WL 2711599, at *10 (N.D. Ill. Mar. 30, 2023) (certifying an Illinois Wage Payment and Collection Act class of "[a]ll individuals who worked in Illinois as delivery drivers"); *see also Roman v. Triton Logistics, Inc.*, 2025 WL 1134191, at *10 (N.D. Ill. Apr. 16, 2025) (certifying an Illinois Wage Payment and Collection Act class of "[a]ll persons who have performed work in Illinois for [company] as company drivers"); *Vera v. HomeDeliveryLink, Inc.*, 2025 WL 20468, at *7 (N.D. Ill. Jan. 2, 2025) (certifying an Illinois Wage Payment and Collection Act class of "[a]ll individuals who contracted with [company] to provide delivery services in Illinois").

Plaintiffs also argue that the class is overbroad because countless members had no deductions taken or reimbursable expenses. Another court in this district dealt with a virtually indistinguishable argument. In *Prokhorov v. IIK Transport*, truck drivers were allegedly

misclassified as independent contractors. 2023 WL 2711599, at *1. The plaintiffs asserted that certain deductions and reimbursements were made in violation of the Illinois Wage Payment and Collection Act. *Id.* Plaintiffs moved for class certification of: "[a]ll individuals who worked as delivery drivers for [defendant] in Illinois between November 2010 and the present and who were classified as independent contractors." *Id.* at *3. The defendant in *Prokhorov* argued the class was overbroad as it would include drivers who did not have deductions or reimbursements. However, the district court did not limit the class, citing the Seventh Circuit's holding in *Bell v. PNC Bank*. *See id.* (*citing Bell v. PNC Bank, Nat. Ass'n*, 800 F.3d 360, 365, 375 (7th Cir. 2015)). In *Bell*, the Seventh Circuit reasoned that, in a class action under the Fair Labor Standards Act, it was possible that all non-managerial employees could have been harmed. *Bell*, 800 F.3d at 380. While evidence would likely later show certain individuals were not harmed by the policy, that fact alone did not preclude class certification. *See id.* Instead, the focus is whether members *could* be harmed. *Id.*

Here, as in *Prokhorov*, if Plaintiffs were misclassified as independent contractors, they *could* be harmed under the Illinois Wage Payment and Collection Act. 2023 WL 2711599, at **1, 3. For example, if Plaintiffs were misclassified as independent contractors, "then deductions were barred and reimbursements were required, with few exceptions." *Id.* at *7. The amended class definition – all individuals who entered into a contract with AN Enterprise to perform delivery services and who personally made deliveries in Illinois for AN Enterprise full-time between March 2013 and the present and who were classified as independent contractors – incorporates all employees who *could* be harmed. It is not overbroad.

### Rule 23(a) Requirements

As noted above, for a class to be certified, Plaintiff must show numerosity, typicality, commonality, and adequacy of representation. Fed. R. Civ. P. 23(a). The court must engage in a

6

"rigorous analysis ... [into whether] ... the prerequisites of Rule 23(a) have been satisfied." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351 (2011) (cleaned up).

## I.  Numerosity

A proposed class is sufficiently numerous when "joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1).  A class can be certified "without determination of its size, so long as it's reasonable to believe it large enough to make joinder impracticable and thus justify a class suit." *Orr v. Shicker*, 953 F.3d 490, 497 (7th Cir. 2020) (cleaned up).  There is no magic number, but the Seventh Circuit has found a forty-member class sufficient to meet the numerosity requirement. *Id.* at 498.  Defendants argue that Plaintiffs fail to satisfy numerosity because: (1) they did not provide evidence of how many proposed class members performed work in Illinois; and (2) the class definition includes individuals instead of companies.

"The key numerosity inquiry under Rule 23(a)(1) is not the number of class members alone but the practicability of joinder." *See Anderson v. Weinert Enters., Inc.*, 986 F.3d 773, 777 (7th Cir. 2021).  Answering the practicability of joinder question requires courts to evaluate the nature of the action, size of the individual claims, and location of class members. *Id.* (cleaned up).  Here, Plaintiffs assert that they were misclassified as independent contractors, leading to improper deductions and reimbursements under the Illinois Wage Payment and Collection Act.  The Wage Payment and Collection Act has a strict, conjunctive test (the "ABC" test)[1], which is used to determine employment status. *See Costello v. BeavEx, Inc.*, 810 F.3d 1045, 1050 (7th Cir. 2016). As discussed in detail below, Seventh Circuit precedent advises district courts to review the "ABC"

---

[1]  Under this test, for someone to be classified as an independent contractor, a defendant must show the worker is an individual: "(1) who has been and will continue to be free from control and direction over the performance of his work, both under his contract… and in fact; and (2) who performs work which is either outside the usual course of business or is performed outside all of the places of business of the employer…; and (3) who is in an independently established trade, occupation, profession or business." 820 Ill. Comp. Stat. Ann. 115/2.

test, and whether employees were misclassified in a class context, so the nature of the claim supports finding numerosity here. *See id.* at 1059–61; *Dancel v. Groupon, Inc.*, 949 F.3d 999, 1006 (7th Cir. 2019). Plaintiffs also provided the Court with a list of over 200 individuals who performed deliveries for Defendants from 2020 to 2023.[2] While the list does not include the number of drivers for Defendants for the entire class period (March 2013 to present) or which drivers delivered in Illinois, the list does indicate that the class size is quite voluminous, likely totaling in the hundreds and spanning various states. *See* Doc. [143] at Ex. C at ¶ 1 (resident of North Carolina), Ex. D at ¶ 1 (resident of Pennsylvania), Ex. E at ¶ 1 (resident of Arizona), Ex. F at ¶ 1 (resident of Texas). Thus, the practicability of joinder inquiry supports class certification.

Defendants also assert that Plaintiffs fail to meet numerosity because "individuals" did not contract with them, companies did. Employers have used this practice – requiring individuals work through third-party corporate entities – to try and circumvent the Illinois Wage Payment and Collection Act. *See, e.g.*, *Hill v. Cargo Runner Co.*, 2023 WL 6213674, at *14 (N.D. Ill. Sept. 25, 2023). The idea being that if corporate entities contract with employers, they cannot be found to be employees. State and federal courts in Illinois reject these end-runs and find employment agreements (whether with corporate entities or individuals) are subject to the Illinois Wage Payment and Collection Act depending on the "ABC" analysis. *See id.* (collecting cases); *see also*

_____

[2] Plaintiffs' initial memorandum in support of class certification (Doc. [99]) and renewed memorandum in support of class certification (Doc. [143]) both state that "records provided by AN Enterprise indicate that well over 100 individuals provided deliveries for AN Enterprise[.]" Doc. [99] at p. 7 n.5; Doc. [143] at p. 8 n.5. The referenced list was not attached to either filing. Nor was it clear from Plaintiffs' phrasing whether the list was limited to employees who provided deliveries in Illinois. Plaintiffs, as the party seeking certification, have the burden of demonstrating the numerosity requirement. *See Roe v. Town of Highland*, 909 F.2d 1097, 1100 n.4 (7th Cir. 1990). In *Molinari v. Financial Asset Management Systems, Inc.*, a court in this district found failure to submit evidence (spreadsheets) demonstrating numerosity was reason to deny the motion for class certification. 2020 WL 4345418, at *4 (N.D. Ill. July 29, 2020). Here, the Court, in the interest of efficiency, ordered Plaintiffs to provide the list referenced and clarify how many individuals on the list made deliveries in Illinois. *See* Doc. [162]. This was done to prevent another motion for class certification, leading to wasted time, energy, and expense for all. The supplemental filing (Doc. [163]) included a list of over 200 individuals who made deliveries for Defendants from 2020 to 2023.

*Johnson v. Diakon Logistics*, 2025 WL 964939, at *6 (N.D. Ill. Mar. 31, 2025); *Vera*, 2025 WL 20468, at *5.

In *Vera v. HomeDelivery Link*, the delivery truck driver plaintiffs sued the defendant for violating the Illinois Wage Payment and Collection Act. 2025 WL 20468, at *1. In opposition to class certification, the defendant argued that the Act covered only employees and not business entities that contracted on behalf of its employees. The district court found this argument unpersuasive since whether "a driver has incorporated as an LLC does not necessarily alter the analysis of whether the driver is an employee" under the Act. *Id.* at *5. Instead, the employment status is determined by the "ABC" test. *Id.*

As in *Vera*, here, Defendants contend that there were several class members who did not contract individually with Defendants, instead contracting through personal corporations, or third-party entities. No matter what the corporate vehicle, common questions exist regarding the application of the Wage Payment and Collection Act and whether individuals were misclassified based on the "ABC" test.

## II.    Commonality

To satisfy commonality, Plaintiffs must assert a common inquiry capable of class wide resolution – which means determination either way will resolve a central issue to the claims. *Lacy v. Cook Cnty., Illinois*, 897 F.3d 847, 865 (7th Cir. 2018) (*citing Wal-Mart Stores, Inc.*, 564 U.S. at 350). Class members need not present identical factual situations. Instead, the question is whether class wide proceedings will generate common answers. *Id.* This is demonstrated in *Suchanek*, 764 F.3d at 756. There, the Seventh Circuit held that when the same conduct or practice (deceptive consumer practices) by the same defendant gave rise to the same claims (consumer protection claims) for all class members, there is a common question. *See id.* at 755–56 (collecting cases).

Here, Plaintiffs assert that Defendants used the same conduct – misclassification of drivers as independent contractors – which gave rise to the same claims under the Illinois Wage Payment and Collection Act. Both parties use the bulk of their allotted pages arguing about the nuances of the "ABC" test utilized by the Illinois Wage Payment and Collection Act to determine employment status. These arguments are more appropriately addressed under the Rule 23(b)(3) predominance inquiry. For now, Rule 23(a) commonality has been satisfied.

### III.  Typicality

A claim is typical if it arises from the "same event or practice or course of conduct that gives rise to the claims of other class members and is based on the same legal theory." *See Lacy*, 897 F.3d at 866 (cleaned up). Commonality and typicality inquiries often overlap. *See id.* (*citing Wal-Mart Stores, Inc.*, 564 U.S. at 349 n.4 ("commonality and typicality requirements… tend to merge.")). In *Lacy*, defendants challenged the district court's class certification of "[a]ll Cook County Jail detainees who have been assigned and currently use a wheelchair." *Id.* at 863. The Seventh Circuit explained that the injurious conduct alleged, failure to provide ADA compliant ramps, was typical of the class at large. Since typicality, and the other Rule 23 requirements were met, the appellate court affirmed the grant of class certification. *Id.* at 867. Here, the alleged injurious conduct – misclassification of employees as independent contractors – is typical of the class of drivers.

Defendants disagree. They assert that, because there are arguable defenses peculiar to certain proposed class members, typicality is destroyed. Defendants focus on the fact that some potential class members were not harmed by deductions or reimbursements. This misses the mark. Courts do not take a detailed look at the merits during class certification. Instead, courts look at if there is a common underlying inquiry typical of all class members. *See Prokhorov*, 2023 WL

10

2711599, at *7.  Here, as in *Prokhorov*, delivery drivers request class certification based on misclassification under the Illinois Wage Payment and Collection Act. *Id.* at *3.  Defendants in both cases argued that, because certain individuals signed unique contracts and incurred varying deductions or reimbursements, commonality and typicality were not met. *Id.* at **6-7.  The district court in *Prokhorov* disagreed, noting that these questions were immaterial to the issue of employee classification – the question at the heart of certification. *Id.*

The same reasoning applies in this case.  If the class is certified on the issue of misclassification, the Court will use common proof to determine whether the drivers should be classified as employees or independent contractors under the "ABC" test. *Id.* at *7.  This will benefit class members by determining the applicability of the Act, while avoiding inconsistent findings.  Questions relating to deductions and reimbursements are immaterial to this inquiry and do not defeat the typicality of the misclassification issue.  Instead, those are merits questions for a later day.

## IV.    Adequacy of Representation

The final requirement of Rule 23(a) is that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4).  This inquiry is composed of two parts, looking at the adequacy of the: (1) named plaintiffs; and (2) their counsel. *Retired Chicago Police Ass'n v. City of Chicago*, 7 F.3d 584, 598 (7th Cir. 1993).  The purpose is to "uncover conflicts of interest between named parties and the class they seek to represent." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997).  More specifically, plaintiffs Latipov and Nazarov, otherwise referred to as class representatives, cannot have interest that are "antagonistic or conflicting" to the class as a whole or present severe credibility problems. *See, e.g.*, *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992).  These two proposed class representatives both

11

made deliveries for Defendants and were classified as independent contractors, and Defendants do not allege that Latipov and Nazarov hold antagonistic or conflicting interests or present credibility problems.

Instead, Defendants refashion prior arguments that: (1) companies contracted with them to perform work not individuals; and (2) deductions were authorized by Latipov and Nazarov. These arguments are irrelevant to the adequacy inquiry. As discussed above, state and federal courts in Illinois reject attempts to end-run the Illinois Wage Payment and Collection Act by nuancing the difference of whether individuals or corporate entities contracted with Defendants. *See e.g.*, *Hill*, 2023 WL 6213674, at *14 (collecting cases). It does not matter if Defendants required Plaintiffs to form a corporate entity before starting work, or if Plaintiffs decided to on their own volition. The analysis remains the same under the "ABC" test.

Further, whether deductions were authorized by individuals is irrelevant to class certification. Instead, the common question and initial inquiry here, as was the case in *Prokhorov*, *Roman*, and *Vera*, is whether individuals were misclassified under the Illinois Wage Payment and Collection Act. *See Prokhorov*, 2023 WL 2711599, at *10; *Roman*, 2025 WL 1134191, at *10; *Vera*, 2025 WL 20468, at *7. Once worker classification is determined, the Court can look at merits questions, such as whether the employees could pre-authorize deductions, receive reimbursements, and were damaged. *See, e.g.*, *Prokhorov*, 2023 WL 2711599, at *4.

While Defendants do not contest class counsel's adequacy in their opposition, the Court must still ensure this Rule 23(a) requirement is met. To determine whether class counsel is adequate, courts consider counsels': (1) work done in identifying or investigating potential claims; (2) experience in handling class actions, other complex litigation, and the claims asserted in the action; (3) knowledge of applicable law; and (4) resources they will commit. Fed. R. Civ. P.

23(g)(1)(A)(i)-(iv). Here, Plaintiffs are represented by class counsel that have been appointed as class counsel for similar suits in this district. *See, e.g.*, *Costello*, 810 F.3d 1045; *Prokhorov*, 2023 WL 2711599; *Vera*, 2025 WL 20468. They have committed resources to this case by litigating it through discovery. Thus, proposed class counsel is adequate to represent the putative class.

### Rule 23(b)(3)

As Rule 23(a) is satisfied, the Court moves to the next step of the certification inquiry. Plaintiffs Latipov and Nazarov are seeking Rule 23(b)(3) class certification to determine the status of workers under all three prongs of the Illinois Wage Payment and Collection Act's "ABC" test. Rule 23(b)(3) permits class certification if common questions of law or fact predominate, and class action is the superior method of adjudication. *See* Fed. R. Civ. P. 23(b)(3); *Messner*, 669 F.3d at 811. This criterion is more demanding than the Rule 23(a) requirements. *Amchem Prods.*, 521 U.S. at 623–24.

The predominance analysis focuses on whether a proposed class is "sufficiently cohesive to warrant adjudication by representation." *Gorss Motels, Inc. v. Brigadoon Fitness, Inc.*, 29 F.4th 839, 843 (7th Cir. 2022) (*quoting Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016)). Courts scrutinize "the relation[ship] between common and individual questions in a case." *Tyson Foods, Inc.*, 577 U.S. at 453. Thus, evaluating predominance "requires more than a tally of common questions; the district court must consider their relative importance." *Eddlemon v. Bradley Univ.*, 65 F.4th 335, 339 (7th Cir. 2023).

For the predominance element, the Court relies on the Seventh Circuit's decision in *Costello v. BeavEx* and reasoning in *Dancel v. Groupon*. *Costello*, 810 F.3d 1045; *Dancel*, 949 F.3d 999. In *Costello*, the defendant classified its drivers as independent contractors under all state and federal labor laws, including the Illinois Wage Payment and Collection Act. 810 F.3d at 1048.

Some of the couriers were incorporated, some were individuals, and others were subcontracted to third-party entities. *Id.* However, they all signed two standard agreements: (1) Owner/Operator Agreement; and (2) Contract Management Services. *Id.* The district court in *Costello* denied the plaintiff drivers' motion for class certification. *Id.* at 1048. It reasoned that, since multiple prongs of the "ABC" test would require individualized factfinding, common questions could not predominate. *Id.* at 1060. The Seventh Circuit reversed, holding that the district court abused its discretion in finding common issues did not predominate. *Id.* at 1059.

In reaching its conclusion, the appellate court noted that the conjunctive "ABC" test is used by the Wage Payment and Collection Act to determine worker classification. *Id.* at 1059. Under this test, for someone to be classified as an independent contractor, a defendant must show the worker is an individual:

(1) who has been and will continue to be free from control and direction over the performance of his work, both under his contract… and in fact; and

(2) who performs work which is either outside the usual course of business or is performed outside all of the places of business of the employer…; and

(3) who is in an independently established trade, occupation, profession or business.

820 Ill. Comp. Stat. Ann. 115/2. If defendants fail on just one prong, plaintiffs must be treated as employees. *Costello*, 810 F.3d at 1059. The Seventh Circuit stated that there was "no doubt that common evidence" would be used to satisfy the second prong, as "common evidence about [defendant's] business model [] is applicable to all class members." *Id.* at 1059–60. Thus, according to the Seventh Circuit, the district court erred when it found that varying evidence on prongs one and three meant common questions could not predominate. *Id.* at 1060. Instead, the Seventh Circuit instructed that class certification is proper if common questions predominate on any prong of the "ABC" test. *Id.* It further noted that common evidence could likely be used to

14

evaluate prong one. *Id.* at 1060–61 (noting control will be evaluated based on twenty-five factors used in *Carpetland U.S.A. Inc. v. Ill. Dep't of Emp. Sec.*, 776 N.E.2d 166, 180–85 (2002) as they applied to groups of employees). The Seventh Circuit stated that finding predominance and certifying a class based on a single prong also served the purpose of substantially advancing litigation, by eliminating the need for individualized fact-finding. *Id.* at 1060.

*Dancel v. Groupon* reiterated the reasoning of *Costello*. *Dancel*, 949 F.3d at 1006. In *Dancel*, the Seventh Circuit explained that, even if only a single element of the Wage Payment and Collection Act inquiry was subject to common proof, certification was warranted because a common answer would represent a significant aspect of the case. *Id.* "If the plaintiffs won on [prong two], then all the couriers would be employees notwithstanding the other elements; if [defendant] won, then it would not have to relitigate the second element against each plaintiff." *Id.* (*citing Costello*, 810 F.3d at 1060). Since the question in *Costello* for prong two (defendant's usual course and places of business) required common evidence, class certification was required. *Id.*

As the claims in this case arise under the Illinois Wage Payment and Collection Act and must be analyzed under the "ABC" test, *Costello's* reasoning applies. Here, as in *Costello*, there are different groups of workers that contracted with Defendants to provide deliveries in Illinois: (1) individual Plaintiffs; (2) individual Plaintiffs who contracted through a self- or co-owned corporate entity; and (3) individual Plaintiffs who contracted through a third-party entity. Contrary to *Costello*, the contracts that were signed by these different groups varied. Doc. [153] at Ex. B at ¶ 7. For example, an individual contracted directly with Defendants via an Independent Contractor Agreement and agreed to be paid a flat 20% fee of revenue with no deductions for expenses. *Id.* at Ex. B at ¶ 34. Plaintiff Nazarov's Independent Contractor Agreement negotiated a payment to his self-owned corporate entity, Starway Trans, of between 87% and 95% of the revenue received for

15

the operation of his truck less agreed expenses. *Id.* at Ex. B at ¶ 13, Ex. D at 53:4-16. Defendants also contracted with third-party entities. *Id.* at Ex. B at ¶ 29. In those situations, Defendants entered into an agreement with the third-party and paid it a percentage of the revenue less agreed expenses. *Id.* The third-party corporation, in turn, determined the pay of its drivers separately. *Id.* at Ex. B at ¶ 30. Defendants were not aware of the terms of the agreements between the third-party entities and their drivers. *Id.* Due to the various contractual agreements between the subgroups, the Court must determine if each prong of the "ABC" test is sufficiently cohesive to warrant common analysis. *See Gorss Motels, Inc.*, 29 F.4th at 843.

Prong one considers whether a worker is free from control and direction in contract and fact. Control is determined based on twenty-five factors used in *Carpetland U.S.A. Inc.*, 776 N.E.2d at 180–85. These factors include reviewing who creates schedules, assignments, or sets quota, if a record of time needs to be furnished, or if reimbursements were made. *Id.* Under this prong, the analysis for an individual or self- or co-owned corporation who directly contracted with Defendants is starkly different from a third-party subcontracted driver. An individual who contracted with Defendants is subject to the terms of the contract they signed. Defendants interface with these parties directly, discussing things such as pay rates, expenses, and delivery routes. Conversely, third-party drivers are likely to have a separate contract with the third-party whom, in turn, contract with Defendants. Thus, it is the third-party who is determining items such as pay rates and expenses of its drivers. To determine the control of this subset would require analysis of the third-parties' contracts and relationships with their drivers, as well as the third-parties' relationships with Defendants. As common evidence cannot be used to satisfy prong one, common questions do not predominate on this factor.

As the Seventh Circuit reasoned in *Costello* and reiterated in *Dancel*, the second prong of the "ABC" test will be satisfied with common evidence. *See Costello*, 810 F.3d at 1059–60; *Dancel*, 949 F.3d at 1006. It does not matter whether Plaintiffs contracted individually or through third-party entities. The analysis of whether drivers performed work in the usual course of business of the Defendants, and/or the places of business of Defendants, will remain consistent across class members. Put another way, the second prong focuses on Defendants and their business model, not the truck drivers. Thus, as was the case in *Costello*, a common issue of fact predominates for factor two.

The third prong, whether a worker is an independently established trade, occupation, profession or business, also leads to different analysis between the subgroups. An individual who directly contracts with Defendants and has no business interest is different than someone with a self-owned corporation, who may have been using the corporation to deliver products for various companies for years. Like a self-owned corporation, a third-party entity that makes a business of subcontracting drivers for Defendants may be considered its own business or profession. Here again, common issues will not predominate the analysis.

Defendants do not directly disagree that there are some common questions within the "ABC" analysis. Instead, they counter that the "ABC" test ignores the realities of interstate trucking as a business model. Whether the indicia of control required by interstate law classify a driver as an independent contractor or employee is not relevant to the class certification analysis. It is a merits argument, and it is not for this Court to determine the merits at the class certification stage. Instead, the only current concern is whether the misclassification inquiry and "ABC" test can be resolved through common evidence. The answer is yes for prong two.

Having determined common issues do not predominate on prongs one and three, the Court declines to certify a Rule 23(b)(3) class as to the entirety of the "ABC" test and need not continue to the superiority analysis.

### Rule 23(c)(4)

District courts have the authority to modify a class definition. *See Schorsch v. Hewlett-Packard Co.*, 417 F.3d 748, 750 (7th Cir. 2005). "When appropriate, an action may be brought or maintained as a class action with respect to particular issues." Fed. R. Civ. P. 23(c)(4). There are no express requirements to determine when an issue is "appropriate," only that the other requirements of Rule 23 are satisfied. 1 McLaughlin on Class Actions § 4:43 (21st ed.). "[A] district court can certify an issue under Rule 23(c)(4) so long as the resolution of that issue is driven predominantly by common questions" and if "certifying the proposed issues would be the most practical and efficient way to resolve the litigation." *Jacks*, 118 F.4th at 898. In the trucking classification cases, as explained in *Costello*, class certification is proper if common questions predominate on any single prong of the "ABC" test. *Costello*, 810 F.3d at 1059–60.

As outlined above, common questions predominate on prong two. Further, certifying an issue class as to the second "ABC" factor would be a practical way of resolving the litigation. As the Seventh Circuit in *Costello* noted, certifying a class based on a single prong serves the purpose of substantially advancing litigation, regardless of the outcome. *Id.* at 1060. If answered in Plaintiffs' favor, all individuals will be classified as employees under the Act. *Id.* If answered in Defendants' favor, prong two will not need to be litigated to satisfaction against each individual Plaintiff. *Id.* This hybrid procedure is viewed favorably by the Seventh Circuit. *See id.* (*citing In re Allstate Ins. Co.*, 400 F.3d 505, 508 (7th Cir. 2005)). It also achieves economies of time, effort, and has the potential for resolution of the entire case (or at least a substantial part) in a uniform

truncated fashion.  As it has been determined that common questions predominate and are the superior means of resolving the litigation on prong two, the Court certifies the above class solely to answer the issue of whether individuals perform work which is either outside the usual course of business or is performed outside all of the places of business of Defendants.

### Conclusion

For the reasons stated above, Plaintiffs' motion for class certification [142] is granted as modified.  The Court certifies the following class:

> Pursuant to Rule 23(c)(4), a class of all individuals who entered into a contract with AN Enterprise to perform delivery services and who personally made deliveries in Illinois for AN Enterprise full-time between March 2013 and the present and who were classified as independent contractors, to resolve the issue of whether the individuals performed work which is either outside the usual course of business or is performed outside all of the places of business of Defendants.

For the above stated reasons, the Court also certifies class representatives: Orzy Latipov and Umar Nazarov; and class counsel: Lichten & Liss-Riordan, P.C.

**SO ORDERED.**

Dated:  May 28, 2025

_____
Sunil R. Harjani
United States District Judge