**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

ORZY LATIPOV and UMAR NAZAROV, individually & on behalf of others similarly situated,

Plaintiffs,

v.

AN ENTERPRISE INC., and KOSTADINKA ZAGORSKA,

Defendants.

Case No. 23 CV 1859

Honorable Sunil R. Harjani

## MEMORANDUM OPINION AND ORDER

Plaintiffs Orzy Latipov and Umar Nazarov allege that Defendants, AN Enterprise and Kostadinka Zagorska, unlawfully classified them and other delivery drivers as independent contractors rather than employees. Based on this alleged misclassification, Plaintiffs assert claims under the Illinois Wage Payment and Collection Act challenging Defendants' practices on wage deductions and reimbursements.[1]

The Court has already certified a Rule 23(c)(4) issue class to resolve one prong of employment classification under Illinois's three-prong test.[2] [165]. Plaintiffs have now filed a renewed motion asking the Court to certify a class to resolve two other prongs of the same test. For the reasons stated below, the Court grants Plaintiffs' motion in part and denies it in part.

---

[1] Plaintiffs also bring a claim under the Fair Labor Standards Act. However, that claim is not at issue for this renewed class certification motion.

[2] The Court certified the following class:

Pursuant to Rule 23(c)(4), a class of all individuals who entered into a contract with AN Enterprise to perform delivery services and who personally made deliveries in Illinois for AN Enterprise full-time between March 2013 and the present and who were classified as independent contractors, to resolve the issue of whether the individuals performed work which is either outside the usual course of business or is performed outside all of the places of business of Defendants.

## Background

Defendants hired workers like Latipov and Nazarov to drive trucks and deliver commodities nationwide. [153-2] ¶¶ 5, 7–9; [143-4] ¶ 4; [143-5] ¶ 3. Defendants contracted with these drivers in three ways: (1) directly with the individuals; (2) through the driver's self- or co-owned corporate entity; or (3) through a third party. *See, e.g.*, [153-2] ¶¶ 7, 11–16, 21–23, 34–35; [153-4] at 53:4–16. Each driver signed an agreement with Defendants, regardless of how they were engaged. *See* [204-1]. The payment terms and deductions varied in each driver's contract. *E.g.*, *id.* at 17, 20, 55, 58, 112, 115. However, these contracts shared common provisions regarding the drivers' working schedules and whether they could decline work offered by Defendants. *E.g.*, *id.* at 40–41; 59–60; 97–98.

When Defendants contracted with third parties, the third parties determined the pay rate for the subcontracted drivers. [153-2] ¶¶ 12, 14–15, 29–30. Defendants were not aware of or a party to the agreements between these third parties and their drivers. *Id.* ¶¶ 23, 30, 41.

According to Plaintiffs, all drivers receive information about freight loads from dispatchers. [143-5] ¶ 9; [143-6] ¶ 8; [143-7] ¶ 8; [143-9] ¶¶ 9–10; [143-11] at 36:1–15. This included details about where to pick up the load, where to drop it off, the price of the load, and the weight. [143-13] at 24:1–11. Drivers also submit fuel receipts and bills of lading to AN Enterprise, and notify Defendants with updates related to licensing, registration, and insurance. [143-19] at 2. Plaintiffs further contend that all drivers sign and adhere to Defendants' policies related to driver safety. [143-17]; [143-18]; [143-20]. If a driver violates a safety regulation, an AN Enterprise employee provides training. [143-12] at 20:15–21:6.

## Discussion

Plaintiffs' renewed motion for class certification concerns the test for determining employment status under the Illinois Wage Payment and Collection Act (IWCPA). The IWPCA provides employees with a cause of action for the timely and complete payment of earned wages. *Costello v. BeavEx, Inc.*, 810 F.3d 1045, 1050 (7th Cir. 2016). It defines "employee" broadly using a three-prong test commonly known as the "ABC" test. *Id.*; 820 ILCS 115/2. For purposes of the IWCPA, a worker is an independent contractor, and not an employee, if Defendants can show they are an individual:

(1) who has been and will continue to be free from control and direction over the performance of his work, both under his contract of service with his employer and in fact; and
(2) who performs work which is either outside the usual course of business or is performed outside all the places of business of the employer…; and

(3) who is in an independently established trade, occupation, profession or business.

820 ILCS 115/2. This test is conjunctive, meaning if Defendants fail to show just one of the three prongs, the drivers are treated as employees rather than independent contractors. *Costello*, 810 F.3d at 1059. Previously, the Court certified a class to resolve the second prong of the ABC test under Rule 23(c)(4), because the analysis of whether the drivers performed work in the usual course of business of Defendants, and/or the places of business of Defendants, is consistent across class members. It thus concluded that common issues predominate for that specific inquiry. [165] at 17–18. The Court rejected certification of a Rule 23(b)(3) class for the entire ABC test because common issues did not predominate on the first and third prongs.

Plaintiffs now ask the Court again to certify a class for the first and third prongs of the ABC test because common evidence will be used to resolve those issues, too. Defendants contend that Plaintiffs present no new evidence or changed circumstances to warrant revisiting the Court's prior decision, and that common questions do not predominate the inquiry under the first or third prongs.

## I. Plaintiffs' Renewed Motion

Defendants first argue that, because Plaintiffs fail to present any material changes from their prior briefing, this renewed motion for class certification is improper. Plaintiffs respond that no heightened requirement governs a renewed class certification motion and that, in any event, they present new evidence to justify a second motion.

Federal Rule of Civil Procedure 23(c)(1)(C) allows the court to alter or amend an order that grants or denies class certification before final judgment. Fed. R. Civ. P. 23(c)(1)(C). Thus, even after a class certification order is entered, "the judge remains free to modify it in light of subsequent developments in the litigation" because that order is "inherently tentative." *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982). Other district courts have considered renewed motions for class certification when presented with further evidence or a change in circumstances. *E.g., Smith v. City of Chicago*, 340 F.R.D. 262, 272 (N.D. Ill. 2021) (considering renewed motion for class certification based on "new theory and new evidence"); *Copeland v. Wabash County, Ind.*, 338 F.R.D. 595, 599 (N.D. Ind. 2021) (granting renewed motion for class certification based on additional evidence).

Plaintiffs submit additional "exemplar" agreements between drivers and Defendants in support of their renewed motion. In line with other district courts, the Court will consider whether such evidence changes its conclusions from its prior ruling. Even with the additional evidence, Plaintiffs still bear the burden of showing their proposed class issues meet the requirements of Rule 23. *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 811 (7th Cir. 2012).

## II. Direction or Control

Plaintiffs argue that common evidence will resolve the first prong of the ABC test, whether the drivers are free from control or direction over their work, so the Court should certify a class on that issue. Specifically, Plaintiffs allege that all drivers, regardless of whether they contract directly with AN Enterprise, through their own incorporated entity, or via a third party, sign the same basic form contract. Defendants respond that the drivers differ too much for class treatment, including how they engage with AN Enterprise and how they are paid.

When appropriate, Rule 23(c)(4) allows for a class action with respect to particular issues. *Jacks v. DirectSat USA, LLC*, 118 F.4th 888, 896 (7th Cir. 2024). In that instance, the proponent of certification must still meet the requirements of Rule 23(a), and neither party contests those factors. *Id*. Thus, the Court incorporates its prior decision on the Rule 23(a) factors. Regarding predominance under Rule 23(b), the proponent must show that "common questions predominate in the resolution of the specific issue or issues that are the subject of the certification motion." *Id*. at 897. That is, the classes must be "sufficiently cohesive" to warrant certification. *Gorss Motels, Inc. v. Brigadoon Fitness, Inc.*, 29 F.4th 839, 843 (7th Cir. 2022). The predominance inquiry requires the Court to scrutinize "the relation between common and individual questions." *Id*. (*quoting Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016)). Evaluating predominance "requires more than just a tally of common questions." *Eddlemon v. Bradley Univ.*, 65 F.4th 335, 339 (7th Cir. 2023). Instead, the Court considers the relative importance of those questions. *Id*.

Recall that the first prong of the ABC test asks whether the individual is "free from control or direction over the performance of his work." 820 ILCS 115/2. Control or direction, in turn, means that the employer "has the right to control or direct the worker, not only as to the work to be done but also how it should be done, whether or not that control is exercised." *Carpetland U.S.A., Inc. v. Ill. Dept. of Emp. Sec.*, 201 Ill.2d 351, 372 (2002) (analyzing nearly identical language in the Illinois Unemployment Insurance Act). Such control is evaluated under 25 factors, including who creates work assignments, schedules and quotas; whether workers must work for a specific number of hours or days per week; whether the company provided reimbursements, tools, or equipment; whether Defendants required workers to attend meetings or training courses; and whether Defendants had the right to set rules and regulations. *Id*. at 374–383; *see Costello*, 810 F.3d at 1060–61 (agreeing that the 25-factor test in *Carpetland* governs the first prong of the ABC test).

In its prior ruling, the Court found that class treatment was inappropriate for this issue because drivers engaged with AN Enterprise in at least three different ways. The contractual relationships between Defendants and these different groups of drivers varied, and those who subcontracted through third parties likely had their own agreements regarding payment terms and expenses. For these reasons, the Court found that individual issues would predominate the analysis.

In the present motion, Plaintiffs emphasize that, regardless of whether other contracts exist, each driver signs a substantially similar agreement with Defendants. Upon examining the exemplar agreements, certain terms on payment structure and deductions still vary across drivers. However, the contracts have consistent provisions about drivers' schedules and obligations to accept work from Defendants. *E.g.*, [204-1] at 40–41; 59–60; 97–98. This is common evidence relevant to the control analysis under the first prong of the ABC test. Further, Plaintiffs submit evidence of Defendants' common policies and practices regarding driver safety and communications with AN Enterprise. *E.g.*, [143-17]; [143-18]; [143-19]. The evidence also indicates that dispatch provided all drivers with information about available freight and delivery schedules. [143-11] at 36:1–15; [143-13] at 24:1–11. Finally, drivers attended orientation before they began driving for Defendants and took Defendants' safety training if they violated a regulation. [143-12] at 20:15–21:6. Given these commonalities in the drivers' experiences, the same evidence can suffice for each class member. This means the issue about whether drivers were under Defendants' control or direction will raise common questions that will predominate and that the Court can address on a class-wide basis. *Gorss Motels*, 29 F.4th at 843–44.

As the Court noted in its earlier opinion, certifying an issue class on one prong of the ABC test is a practical way to advance the litigation. As with the second prong, which the Court previously certified, an issue class on the first prong will let the parties resolve a significant aspect of the case, regardless of which party prevails on the merits. *See Costello*, 810 F.3d at 1060 (discussing certifying a class for prong two of the ABC test). Because common questions predominate under the first prong as well, the Court finds that analyzing it on a class-wide basis will similarly "achieve economies of time, effort, and expense," making class treatment superior. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 615 (1997). Accordingly, the Court grants Plaintiff's motion in part and certifies the following class:

> Pursuant to Rule 23(c)(4), a class of all individuals who entered into a contract with AN Enterprise to perform delivery services and who personally made deliveries in Illinois for AN Enterprise full-time between March 2013 and the present and who were classified as independent contractors, to resolve the issue of whether the individuals have been and will continue to be free from control and direction over the performance of their work, both under their contracts of service and in fact.

## III. Independently established trade, occupation, profession, or business

Plaintiffs also move for class certification on the third prong of the ABC test, whether the drivers were in an independently established trade, occupation, profession, or business. 820 ILCS 115/2. They contend that common evidence predominates this inquiry because drivers who engage with AN Enterprise directly perform the same work as those who contract through a self- or co-owned corporation.

For purposes of the ABC test, an independently established business can operate "without hindrance from any other individual." *AFM Messenger Serv., Inc. v. Dept. of Emp. Sec.*, 198 Ill.2d 380, 400 (2001) (considering nearly identical language in the Illinois Unemployment Insurance Act). An independent enterprise is free from reliance on Defendants such that it "could survive any relationship with the particular person contracting for services." *Id.* at 401.

The Court previously found that the distinct driver relationships lead to divergent analyses for this prong, meaning that common questions will not predominate. Plaintiffs present no argument to warrant a different conclusion. Drivers engage with AN Enterprise through at least three business models, making this issue inappropriate for class resolution. For drivers who contract with third parties, Defendants have no role in determining the amount or method of driver compensation. [153-2] ¶¶ 12, 15. And as the Court already pointed out, these third parties may themselves be independent enterprises so that the drivers may have an economic dependence on the third party rather than Defendants. Analyzing these drivers' independence will require evidence of the contracts and working arrangements between the drivers and third parties, which do not exist for those drivers who contract directly or through their own corporation.

Drivers with a self- or co-owned corporation also present separate issues that cannot be resolved on a class-wide basis. Even if, as Plaintiffs argue, such drivers functionally worked for Defendants full-time, these corporations may still be distinct, independent businesses that made deliveries pursuant to other engagements for years before working with AN Enterprise. Accordingly, the drivers with an incorporated entity may not be economically reliant on Defendants as they have other business interests. The analysis of whether these drivers are independently established businesses will require different evidence than that needed for drivers who contract directly or engage through a third party.

Plaintiffs contend that any driver's incorporation should have no bearing on the analysis because such workers may still be employees under the IWPCA. But this argument misses the mark. The Court agrees that workers who contract through third-party corporate entities may constitute employees for IWPCA claims. *Hill v. Cargo Runner Co.*, 2023 WL 6213674, at *14 (N.D. Ill. Sept. 25, 2013) (collecting cases). But the Court is not addressing whether these drivers may fall under the

IWPCA's protections. Rather, the predominance inquiry considers if the same methods can be used to assess whether those drivers, individual drivers, and drivers subcontracted to third parties are sufficiently independent of Defendants. *See Gorss Motels*, 29 F.4th at 845 ("[I]t is the method of determining the answer and not the answer itself that drives the predominance consideration."). That answer is no.

The distinct contractual arrangements in this case distinguish it from situations where courts find common issues predominate on the third prong of the ABC test. For example, in *Roman v. Triton Logistics, Inc.*, 2025 WL 1134191 (N.D. Ill. Apr. 16, 2025), the defendant set all drivers' pay rates and deductions, and subjected them to uniform policies and practices. *Id.* at *1. The district court found the third prong could be adjudicated through common evidence because the same business model governed all drivers. *Id.* at *5. Similarly, in *Prokhorov v. IIK Transport, Inc.*, 2023 WL 2711599 (N.D. Ill. Mar. 30, 2023), defendant's same policies, practices, and payment terms applied to all drivers. *Id.* at *1–2. Since the drivers all adhered to the same business model, the third prong could be resolved on a class-wide basis. *Id.* at *5. In contrast, the drivers here engaged with Defendants through three different business models, which can lead to varying levels of economic reliance on Defendants. So, while all drivers may share some similarities in their relationships with AN Enterprise, the distinct individual questions predominate the inquiry into the drivers' independence. For these reasons, the Court denies Plaintiffs' motion to certify a class on this issue.

## Conclusion

For the reasons stated above, Plaintiff's renewed motion for class certification [204] is granted in part and denied in part. Common questions predominate the inquiry into whether Plaintiffs are free of Defendants' direction or control, so the Court certifies a class as to that issue pursuant to Rule 23(c)(4). However, individual questions predominate the analysis for the third prong of the ABC test, meaning the issue is not appropriate for class resolution.

**SO ORDERED.**

Dated: October 27, 2026

Sunil R. Harjani
United States District Judge